11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Eastland
County Cooperative Dispatch, Clay Coffey,

Wayne Bradford, Ken Wheeler, and Gerald Cozart 

Appellants

Vs.                   No. 11-00-00184-CV B Appeal from Eastland
County[1]

Elnor
Maxine Poyner, Individually and as Independent 

Executor
of the Estate of William Euell Poyner, and as 

sole heir of William Euell Poyner [2]

Appellee

 

Eastland
County Cooperative Dispatch, Eastland County, 

and the City of Gorman

Appellants

Vs.                   No. 11-00-00284-CV B Appeal from Eastland
County

Elnor
Maxine Poyner, Individually and as Independent 

Executor
of the Estate of William Euell Poyner, and as 

sole heir of William Euell Poyner

Appellee

 








These appeals arise from the suit Elnor Maxine
Poyner filed following the death of her husband William Euell Poyner who was
killed in an armed encounter with law enforcement officers.  Eastland County Cooperative Dispatch,
Eastland County Sheriff Wayne Bradford, Eastland County Deputy Sheriff Clay
Coffey, City of Gorman Chief of Police Ken Wheeler, and City of Gorman Reserve
Officer Gerald Cozart moved for summary judgment and asserted various immunity
claims.  The trial court denied all
motions for summary judgment, and No. 11-00-00184-CV is the interlocutory
appeal from that order pursuant to TEX. CIV. PRAC. & REM. CODE ANN. ' 51.014(a)(5) (Vernon Supp.
2001).[3]  For the reasons stated in this opinion, we
affirm the judgment denying official immunity to Deputy Coffey and Officer
Cozart, but we reverse the judgment denying the motions for summary judgment in
all other respects and dismiss those claims against all appellants.  Eastland County Cooperative Dispatch is a
governmental unit, and we do not have jurisdiction to hear its interlocutory
appeal.  See Section 51.014(a)(5).  The appeal is dismissed as to Eastland
County Cooperative Dispatch.

By a 1997 amendment to TEX. CIV. PRAC. & REM.
CODE ANN. ' 51.014(a)
(Vernon Supp. 2001), the legislature added Section 51.014(a)(8) which provides
that a governmental unit may file an interlocutory appeal from the denial of a
plea to the jurisdiction.  See Section
51.014(a)(8).  See also Texas Department
of Criminal Justice v. Miller, 44 Tex. Sup. Ct. J. 963, 964 n.2 (June 21,
2001).  Eastland County, the City of
Gorman, and Eastland County Cooperative Dispatch each filed pleas to the
jurisdiction claiming immunity.  The
trial court denied those pleas to the jurisdiction, and No. 11-00-00284-CV is
the appeal from those rulings.  For the
reasons stated in this opinion, we reverse the trial court=s ruling upon the pleas to
the jurisdiction and render judgment dismissing the claims against Eastland
County, the City of Gorman, and Eastland County Cooperative Dispatch.

Because the resolution of each of these appeals
involves common questions, although under somewhat different standards of
review, we will consider them together. We will first address the summary
judgment rulings, and then we will discuss the rulings on the pleas to the
jurisdiction.  

                                           MOTIONS
FOR SUMMARY JUDGMENT

                                                               Standard
of Review








The standard of review in cases in which the trial
court has denied a motion for summary judgment is the same standard used to
review the granting of a motion for summary judgment.  City of San Antonio v. Hernandez, 53 S.W.3d 404 (Tex.App. B San Antonio 2001, pet=n den=d); see also Bartlett v.
Cinemark USA, Inc., 908 S.W.2d 229 (Tex.App. - Dallas 1995, no writ).  The question is whether the movant has met
its burden of showing that there are no genuine issues of material fact and that
judgment should be granted as a matter of law. 
Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546
(Tex.1985).  All evidence favorable to
the non-movant must be taken as true, and all reasonable doubts must be
resolved in favor of the non-movant.  Nixon
v. Mr. Property Management Company, Inc., supra. 

In order to prevail upon a motion for summary
judgment based upon an affirmative defense, the movant must come forward with
summary judgment evidence for each element of the affirmative defense.  American Tobacco Company, Inc. v. Grinnell,
951 S.W.2d 420, 425 (Tex.1997); Nichols v. Smith, 507 S.W.2d 518
(Tex.1974).  If the movant conclusively
establishes the defense, then it is incumbent upon the non-movant to come
forward with summary judgment evidence to the contrary.  Torres v. Western Casualty and Surety
Company, 457 S.W.2d 50 (Tex.1970)

Appellants filed their motions for summary
judgment in accordance with TEX.R.CIV.P. 166a(c) (Atraditional@
motion for summary judgment) and also in accordance with TEX.R.CIV.P. 166a(i)
(a Ano-evidence@ motion for summary
judgment), alleging that appellee had no evidence on one or more elements of
the causes of action.  Because our
holding in connection with the Atraditional@ motions for summary
judgment is dispositive of this appeal except as to Deputy Coffey and Officer
Cozart, we need only discuss the Ano-evidence@ aspect of appellants= motions for summary
judgment as to them. 

 The
summary judgment evidence presented in this case reveals that 96-year-old
William Euell Poyner died as a result of gunshot wounds which he received
during a confrontation with  law
enforcement personnel.  Mr. Poyner and
his wife, Elnor Maxine Poyner, lived in Eastland County, just outside the city
limits of the City of Gorman.  Mrs.
Poyner was 81 years old.  On the night
of the shooting, Mrs. Poyner telephoned the Gorman Police Department.  The summary judgment evidence showed that
the call was made at 10:39 p.m.  Calls
to the Gorman Police Department were 
forwarded to the Eastland County Cooperative Dispatch, a governmental
unit created pursuant to what is now TEX. GOV=T
CODE ANN. ' 791.001 et
seq. (Vernon 1994 & Supp. 2001). 
Dispatch provided 9-1-1 services within Eastland County; and it also
conducted the law enforcement dispatch business for certain governmental
bodies, including the County of Eastland and the City of Gorman. 








When she talked to the Dispatch employee, Mrs.
Poyner informed him that Mr. Poyner mistakenly thought that she was involved
with other men.  She told Dispatch that,
on this particular night, she had awakened Mr. Poyner to get him to stop
snoring.  Other summary judgment
evidence shows that she eventually went into another room to sleep and turned
the light off in the bedroom.  Shortly
after that, she noticed that the light in the bedroom was on again.  When she went into the bedroom, Mrs. Poyner
noticed that Mr. Poyner was fully dressed and was looking through a drawer for
his Asix shooter.@  She told Dispatch that Mr. Poyner had been looking for the Asix shooter,@ that he had found another
gun, and that he was probably out Aon
the carport.@  

Lights from vehicles traveling down the highway in
front of the Poyner=s
house would shine into their house, and Mr. Poyner thought that these lights
were signals from Mrs. Poyner=s
boyfriends for her to come out.  This
particular night was high school graduation night, and there was a lot of
traffic on the highway.  Although he
could not find his Asix
shooter,@ Mr. Poyner
did find a shotgun.  He told Mrs. Poyner:  AI=m going to stop this
tonight.@  Mrs. Poyner told Dispatch how to get to
their house and that she would leave the porch light on.

Gorman Police Officer Abel Saldana arrived at the
Poyner residence first.  After the
Dispatch employee talked with Mrs. Poyner, Deputy  Coffey was dispatched to the Poyner home.  Eventually, Deputy Coffey and Officer Cozart
arrived at the scene.  Eastland County
Constable Tipton was also there.  The
officers= vehicles
were parked in such a manner that the headlights were shining toward the Poyner=s house.  Officer Cozart=s
vehicle was parked so that the headlights were shining at the back of the
house.  The red and blue emergency
lights were turned off on all of the law enforcement vehicles, and Mr. Poyner
had turned the lights off inside the house. 


When Officer Saldana talked with Mrs. Poyner, she
appeared to be shaking and nervous.  She
told Officer Saldana that he needed to talk to Mr. Poyner and that Mr. Poyner
had a gun and was accusing her of running around on him.  Mrs. Poyner was placed in a safe place away
from the house, and Mr. Poyner was still in the house.  

While Deputy Coffey was talking to Mrs. Poyner,
Officer Cozart told the others that Mr. Poyner was coming out of the house and
that he had either a rifle or a shotgun. 
Mr. Poyner came out of the house very slowly and walked in a slow
shuffling movement, which was his usual way of walking.  Deputy Coffey came to the back of the house
and began to approach Mr. Poyner.  








The summary judgment evidence presented by
appellants shows that the officers told Mr. Poyner to drop the gun and called
his name several times.  Mr. Poyner
suffered from a hearing problem, and that information had been conveyed to
Deputy Coffey.  Summary judgment
evidence presented by appellee contains the statements as well as the
deposition testimony of two non-law enforcement personnel.  These witnesses testified that they did not
hear the officers identify themselves nor did they hear the officers order Mr.
Poyner to drop his weapon.  However, the
witnesses also said that they could not say that the command was not given and
that, because they were on the other side of the house, they might not have
heard it.  The summary judgment record
reveals that Officer Cozart first saw Mr. Poyner begin to raise his weapon to a
firing position and that the officers began to fire multiple rounds at Mr.
Poyner.  The summary judgment evidence
conclusively establishes that no other persons were in a position to see
whether Mr. Poyner raised his weapon to a firing position prior to being fired
upon by the officers.  Mr. Poyner died
as a result of the gunshot wounds.

Mrs. Poyner, for herself and as executrix of Mr.
Poyner=s estate, sued
appellants and sought damages under 42 U.S.C.A. '
1983 et seq. (West Pamph. Supp. 2001), as well as for damages under state law
brought about by claims of varying degrees of negligence and culpability of
those persons and entities involved.[4]  Each appellant filed motions for summary
judgment.  The motions for summary
judgment implicated the doctrines of sovereign immunity, official immunity, and
qualified immunity.  The trial court
denied all of the motions for summary judgment without giving reasons for denying
the motions.

The petition filed in the trial court by appellee
contained multiple allegations. 
Although the petition does not constitute summary judgment evidence, we
feel that it is appropriate to an understanding of the issues on appeal for us
to detail the allegations made against appellants by appellee.  Further, it is necessary for us to discuss
the allegations in connection with the pleas to the jurisdiction filed by the
governmental units.








The live petition contained general allegations of
wrongful acts of appellants and others, followed by certain
specifically-enumerated allegations, and then follow other additional general
allegations of wrongful acts. 
Generally, the allegations were that the officers at the scene
trespassed with vehicles belonging to Eastland County and the City of Gorman
and that they shined the headlights of the vehicles onto Mr. Poyner=s property and into his
face so that he could not identify those present as law enforcement
officers.  Further, appellee alleged
that the officers intentionally and knowingly disguised their identity.  Appellee also maintained that the officers
used large caliber weapons to shoot and kill Mr. Poyner with reckless abandon.  Appellee alleged that all of the conduct
named Awas done
negligently, with reckless disregard and conscious indifference to the rights
of Decedent.@

Appellee also stated in the petition that the
shooting was committed through the gross negligence of the officers, as well as
through the incompetence of the officers, with conscious indifference to Mr.
Poyner=s rights.  Further, appellee complained that, through
the gross negligence of the City of Gorman, Eastland County, and Dispatch,
false information was knowingly and with reckless disregard and conscious indifference
to Mr. Poyner=s rights
transmitted to the responding officers, creating a false impression in the
minds of the responding officers.  In
other general allegations, appellee stated that the City of Gorman, Eastland
County, and Dispatch negligently and with conscious indifference to Mr. Poyner
broadcasted false and misleading information throughout the entire episode.

The allegations further complained of a negligent
entrustment by the City of Gorman, Eastland County, Sheriff Bradford, and Chief
Wheeler.  Appellee also alleged that the
named parties were negligent in hiring and in arming Deputy Coffee and Officer
Cozart when they should have known of their incompetency, their inadequate
training, and their propensity to Amake
mistakes and panic.@  Appellee alleged that such conduct was
unconscionable.








Appellee also alleged in her pleadings that
Eastland County and the City of Gorman hired incompetent and mentally unstable
officers and that those officers failed to heed advice given to them regarding
the fact that there was a lack of any threat from Mr. Poyner.   Appellee further alleged that the officers
ignored information given to them regarding Mr. Poyner=s physical condition.  Appellee also pleaded that the officers
failed to identify themselves to Mr. Poyner and that they also failed to advise
him of the nature of their visit.  The
general allegations also provided that the officers created a situation in
which Mr. Poyner could not identify them by failing to display their emergency overhead
lights.

In 22 specifically numbered allegations, appellee
alleged negligence against all parties, except Dispatch.  We quote those allegations exactly as they
appeared in the live petition:

1.
Negligent entrustment;

 

2.
Negligent hiring;

 

3.
Negligent in failing to check background of their police officers;

 

4.
Negligent in failing to supervise their police officers and other employees;

 

5.
Negligent in failing to properly train their police officers and other
employees;

 

6.
Negligent handling of citizen requests for assistance;

 

7.
Negligently dispatching of officers;

 

8.
Negligently drawing inaccurate conclusions and broadcasting the opinions and
biases of the dispatch instead of the information received from Plaintiff;

 

9.
Negligent in gross misrepresentations of fact to responding officers;

 

10.
Negligent in using excessive force;

 

11.
Negligent in not following usual and standard police methods and procedures,
including methods involving the least necessary force;

 

12.
Negligent use of firearms;

 

13.
Negligent use of official vehicles;

 

14.
Failure to warn the Decedent;  

 

15.
Wrongful entry on the Decedent=s
property without a warrant;

 

16.
Use of excessive force;

 

17.  Negligently failing to heed the advice and
warnings of other officers who  warned
that the Decedent was old and deaf and could not hear officers;








18.
Negligently failing to assess the situation, including the lack of any threat
posed by Decedent and the physical condition of Decedent;

 

19.
Failure to remove the officers that committed the homicide from active duty;

 

20.
Allowing the officers who committed the homicide to participate in the crime
scene investigation and, in fact, allowing them to control the crime scene and
access evidence;     

 

21.
Negligently acting in a state of panic and failure to exercise standard police
procedure; and

 

22.
Negligent training and supervision.

  

In 16 separately enumerated
paragraphs, appellee alleges negligence against Dispatch.  We again quote those allegations exactly as
they appeared in the live petition:

1.
Negligent entrustment;

 

2.
Negligent hiring;

 

3.
Negligent in failing to check background of their officers and employees;

 

4.
Negligent in failing to supervise their officers and other employees;

 

5.
Negligent in failing to properly train their officers and other employees;

 

6.
Negligent handling of citizen requests for assistance;

 

7.  Negligent dispatching of officers;

 

8.
Negligently drawing inaccurate conclusions and broadcasting the opinions and
biases of the dispatch and dispatch personnel instead of the information
received from Plaintiff;

 

9.
Negligent in gross misrepresentations of fact to responding officers;

 

10.
Negligent in using or causing to be used excessive force;

 

11. Negligent in not following
usual and standard police methods and procedures, including methods to advise
officers properly so as to involve the least necessary force.   








12.
Use or causing to be used of excessive force;

 

13.
Negligently failing to heed the advice of Plaintiff;

 

14.
Negligently failing to assess the situation, including the lack of any threat
posed by Decedent and the physical condition of Decedent;

 

15.
Negligently acting in a state of panic or excitement and failure to exercise
standard police procedure; and

 

16.
Negligent training and supervision.

 

Following those specifically
enumerated allegations, appellee continued with additional general
allegations.  Appellee contended that
the City of Gorman, Eastland County, Sheriff Bradford, and Chief Wheeler failed
to give advice to their officers regarding coping with the stress of their
jobs; that they failed to maintain proper policies or that the policies were
inadequate regarding such things as use of deadly force and use of emergency
overhead lights on the police vehicles; that they failed to evaluate the
psychiatric, psychological, and emotional stability of the officers, including
alcohol abuse and anger control; that Eastland County and the City of Gorman
wrongfully delegated its duties to Dispatch and their untrained, uncertified
employees; that the City of Gorman, Eastland County, Sheriff Bradford, and
Chief Wheeler conspired to create a cover-up; that the officers improperly used
cover; that the officers improperly advanced upon the victim; and that the
officers failed to use a non-lethal means to resolve the issue.

With this background for an
understanding of the nature of the case and bearing in mind the standard of
review in cases involving the denial of motions for summary judgments and pleas
to the jurisdiction based on immunity, we will examine the various types of
immunity claims involved.

                                                    Immunity
Generally








Governmental immunity is a common-law rule.  Harris County Flood Control District v. Mihelich,
525 S.W.2d 506 (Tex.1975).  Governmental
immunity encompasses both sovereign immunity and official immunity.  Federal Sign v. Texas Southern University,
951 S.W.2d 401 (Tex.1997); Delaney v. University of Houston, 835 S.W.2d 56
(Tex.1992).   As we will discuss later,
governmental units are immune from suit in certain circumstances, and qualified
immunity also is available for individuals under Section 1983.  Therefore, in reaching a resolution of this
case, we must examine and discuss three types of immunity: (1) official
immunity, (2) qualified immunity, and (3) sovereign immunity.

                                                           OFFICIAL
IMMUNITY           

                                                    1.  Traditional Summary Judgment

We must first determine whether Sheriff Bradford,
Deputy Coffey, Chief Wheeler, and Officer Cozart are protected from individual
liability in this case by virtue of the doctrine of official immunity.  They have been sued not only in their
official capacities but also in their individual capacities.

Unlike sovereign immunity, the doctrine of
official immunity is not a bar to suit (a jurisdictional issue) but is a bar to
liability and shields the party claiming official immunity from liability in
the suit individually.  McCartney v.
May, 50 S.W.3d 599 (Tex.App. - Amarillo 
2001, no pet=n).  Official immunity is an affirmative defense
which protects government employees, in their individual capacities, from
liability related to:  (1) the
performance of discretionary duties, (2) within the scope of the employee=s authority, (3) if the
employee acts in good faith.  City of
Lancaster v. Chambers, 883 S.W.2d 650 (Tex.1994).  Because it is an affirmative defense, the burden is upon the movant
to establish each element of the defense. Nichols v. Smith, supra.  If the movant establishes the defense, then
the non-movant must come forward with summary judgment evidence to the
contrary.  Torres v. Western Casualty
and Surety Company, supra.

First, we hold that the officers have shown that
they were performing discretionary functions and that there is no summary
judgment proof to the contrary. 
Officials perform discretionary acts when the actions are those which
involve Apersonal
deliberation, decision, and judgment.@  See Vasquez v. Hernandez, 844 S.W.2d 802,
804 (Tex.App. B San
Antonio 1992, writ dism=d
w.o.j.).

Next, we hold that the officers have shown that
they were performing those discretionary duties within the scope of their
authority.   Officers act within the
scope of their authority if they are discharging duties generally assigned to
them.  City of Lancaster v. Chambers,
supra.   The question then becomes
whether the officers acted in good faith.








In official immunity cases, good faith is measured
against a standard of objective legal reasonableness, and the subjective state
of mind of the officer is irrelevant. 
City of Lancaster v. Chambers, supra. 
The test for good faith is analogous to an abuse of discretion
standard.  An officer acts in bad faith
only if he could not have reasonably reached the decision in question.  University of Houston v. Clark, 38 S.W.3d
578 (Tex.2000).  

In order to establish the Agood faith@
element of their defense of official immunity, it was necessary for the
officers to establish that a reasonably prudent officer could have believed
that his or her actions were justified under the circumstances.  City of Lancaster v. Chambers, supra; Alamo
Workforce Development, Inc. v. Vann, 21 S.W.3d 428 (Tex.App. B San Antonio 2000, no pet=n).  Once the officers establish that element,
the non-movant must come forward with summary judgment evidence which shows Athat no reasonable person
in the officer=s
position could have thought that the facts justified the officer=s acts.@  University of Houston v. Clark, supra at 581.

The summary judgment evidence shows that, on the
night of the shooting, Sheriff Bradford requested that Texas Ranger Bobby
Grubbs conduct an investigation into the events of the evening.  Ranger Grubbs performed that investigation,
and the summary judgment evidence details his credentials and his
investigation.  After giving the details
of his investigation, Ranger Grubbs testified that both Deputy Coffey and
Officer Cozart acted as reasonable officers based on the information they had
at the time.  He saw nothing that would
indicate that the use of force was not justified, and he also testified that
all of the evidence considered by him shows that the use of force was justified.


The summary judgment evidence also shows that
Sheriff Bradford was of the same opinion regarding Deputy Coffey and stated
that:  AIn
my opinion, a reasonably prudent police officer, in the same situation as
Deputy Coffey, could have believed that his actions were justified.@  Sheriff Bradford further testified regarding his hiring,
training, and supervising practices. 
His testimony was also to the effect that, at all times pertaining to
this lawsuit, Officer Coffey=s
actions were reasonable, proper, and necessary in connection with the performance
of his duties.    








Chief Wheeler also provided summary judgment
evidence.  His testimony was that
Officer Cozart acted reasonably with respect to the incident made the basis of
this lawsuit and that Officer Cozart=s
use of his firearm was justified.  He
also testified regarding the policies of the Gorman Police Department, and it
was his opinion that neither he nor any of his officers committed any act which
constituted either negligence or proximate cause of any injury connected with
the incident made the basis of this lawsuit.[5]  

After appellants produced the summary judgment
evidence outlined above, it was incumbent upon appellee to come forward with
summary judgment evidence Athat
no reasonable person in the officer=s
position could have thought that the facts justified the officer=s acts.@  University of Houston v. Clark, supra at 581.  Appellee=s
summary judgment evidence included an affidavit from an expert witness on law
enforcement, Danny B. Steffenauer. 
Steffenauer outlined his credentials and gave the basis for his expert
opinion.  He swore that there was a lack
of any sufficient policy in the Eastland County Sheriff=s Office or the City of Gorman regarding
deadly force and armed encounters.  It
was also Steffenauer=s
opinion that this lack was a negligent and proximate cause of the confrontation
and the death of Mr. Poyner.  He is of
the further opinion that:  

[N]o
reasonable and prudent police officer, acting under the same or similar
circumstances as those confronting the officers at the Poyner residence, would
not have created or permitted such a fact situation...which raised an issue of
the need to use deadly force at all against [Mr.] Poyner.  Poyner=s
death could have been avoided, without resorting to deadly force, had such
officers followed even the most elemental concepts of the use of deadly force.[6]   

 

The affidavit sets forth the details upon which Steffenauer bases
his opinion.








Steffenauer=s
expert opinion was directed toward the policies of Eastland County and the City
of Gorman and at the actions of Deputy Coffey and Officer Cozart while at the
scene.  Sheriff Bradford=s and Chief Wheeler=s summary judgment evidence
regarding official immunity was not controverted by proof that no reasonable
officer acting under the same or similar circumstances could have believed that
the decisions which they made at any point in time complained of in this
lawsuit were proper.  The trial court
erred when it failed to grant official immunity to Sheriff Bradford and Chief
Wheeler in their individual capacities. 
Because appellee came forward with summary judgment proof to controvert
the official immunity claims of Deputy Coffey and Officer Cozart, the trial
court did not err in overruling their motions for summary judgment relating to
official immunity from personal liability.

           2.  Deputy Coffey=s and Officer Cozart=s ANo-Evidence@ Motions for Summary
Judgment

Because we have held that Deputy Coffey and
Officer Cozart were not entitled to summary judgment under their Atraditional@ motions for summary
judgment, it is necessary for us to discuss their claims to summary judgment
under TEX.R.CIV.P. 166a(i) Ano-evidence@ motions for summary
judgment.  In this connection, we view
only the evidence presented by the non-movant. 
Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614 (Tex.App. - Eastland
2000, pet=n den=d).  We will accept as true evidence that is
favorable to non-movants, and we will indulge every reasonable inference and
resolve all doubts in favor of non-movants. 
Lavy v. Pitts, 29 S.W.3d 353, 356 (Tex.App. - Eastland 2000, pet=n den=d).  A no-evidence summary judgment is not proper
if the non-movant presents more than a scintilla of evidence in answer to the
motion for summary judgment.  Lavy v.
Pitts, supra.  We have set forth the
non-movant=s summary
judgment evidence.  We again hold that
appellee has presented more than a scintilla of evidence to prevent the
application of the doctrine of official immunity to the individual claims
against Deputy Coffey and Officer Cozart and that neither officer was entitled
to a no-evidence summary judgment on this claim.

                                                         SECTION
1983 CLAIMS

We now review the trial court=s action when it denied the
motions for summary judgment filed by Sheriff Bradford, Chief Wheeler, Deputy
Coffey, and Officer Cozart in connection with the Section 1983 claims.  Those motions were based, in part, on the
officials= claims to
qualified immunity.  AQualified immunity is an
entitlement not to stand trial or face the other burdens of litigation.@  Saucier v. Katz, 531 U.S. 991, 121 S.Ct. 2151, 150 L.Ed.2d 272,
281 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86
L.Ed.2d 411 (1985).  It is not a defense
to liability; it is an immunity from suit.  
Saucier v. Katz, 150 L.Ed.2d at 281.  









In Anderson v. Creighton, 483 U.S. 635, 107 S.Ct.
3034, 97 L.Ed.2d 523, 534 (1987), Justice Scalia, writing for a majority of the
Court, stated:

The general rule of qualified immunity is intended
to provide government officials with the ability Areasonably
[to] anticipate when their conduct may give rise to liability for damages.@  Where that rule is applicable, officials can know that they will
not be held personally liable as long as their actions are reasonable in light
of current American law.  (Citations
omitted)

 

In discussing the reason behind the rule, the Court in Anderson
v. Creighton, 97 L.Ed.2d at 529 further stated:

When government officials abuse their offices, Aaction[s] for damages may
offer the only realistic avenue for vindication of constitutional guarantees.@  On the other hand, permitting damages suits against government
officials can entail substantial social costs, including the risk that fear of
personal monetary liability and harassing litigation will unduly inhibit officials
in the discharge of their duties. 
(Citation omitted)  Our cases
have accommodated these conflicting concerns by generally providing government
officials performing discretionary functions with a qualified immunity,
shielding them from civil damages liability as long as their actions could
reasonably have been thought consistent with the rights they are alleged to
have violated.  See, e.g., Malley v.
Briggs, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)(qualified
immunity protects Aall
but the plainly incompetent or those who knowingly violate the law@).

 








It is important to remember that we are not
reviewing this case on its merits with the 
standards attendant upon such a review and that we are only reviewing
the application of immunity upon motions for summary judgment.  In cases involving the preliminary review of
the use of excessive force, whether qualified immunity is available and whether
excessive force actually was used in a particular case are different inquiries.  Saucier v. Katz, supra.  The test for determining the existence of
qualified immunity in this context is a two-part test.  The first part of the inquiry is Awhether a constitutional
right would have been violated on the facts alleged.@  
Saucier v. Katz, 150 L.Ed.2d at 281. 
In other words, when we consider the summary judgment evidence in the
light most favorable to the non-movant, does that evidence show that the
conduct complained of violated a constitutional right?  If the evidence does not show that a
constitutional right has been violated, then the matter is at an end; and
qualified immunity protects the official. 
If the favorable consideration of the evidence reveals that a violation
of a constitutional right could be shown, then the next inquiry is whether that
right was clearly established at the time. 
Saucier v. Katz, supra.

Whether a right has been clearly established
involves more than a broad, general proposition.  Saucier v. Katz, supra. 
As an example, the court in Saucier noted that in Graham v.
Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), it was
established that the use of force, if excessive under the objective standard of
reasonableness, violates the Fourth Amendment. 
However, when determining immunity, that is not enough.  AThe
contours of the right must be sufficiently clear that a reasonable official
would understand that what he is doing violates that right.@  Saucier v. Katz, 150 L.Ed.2d at 282.  We must review the matter within Athe
specific context of the case, not as a broad general proposition.@ Saucier v. Katz, 150
L.Ed.2d at 281.

As the Court did in Saucier, we will
assume, without deciding for purposes of this opinion,  that a constitutional violation could have
occurred under the summary judgment evidence based upon the general prohibition
against excessive force.  Was that
general prohibition the source for clearly established law which the officers
violated in this case?  AThe question is what the
officer[s] reasonably understood [their] powers and responsibilities to be,
when [they] acted, under clearly established standards.@ 
Saucier v. Katz, 150 L.Ed.2d at 285.

When considered in the light most favorable to
appellee, the summary judgment evidence presented by appellee shows that Deputy
Coffey was advancing as opposed to retreating when Mr. Poyner was shot.  However, the undisputed evidence establishes
that, at the time Mr. Poyner was shot, the officers had just seen him raise his
weapon to a firing position.  The
clearly established standards at the time provided that an officer was
justified in using deadly force to protect himself.  City of Dallas v. Half Price Books, Records, Magazines, Inc., 883
S.W.2d 374 (Tex.App. B
Dallas 1994, no writ).  Because there
was no clearly established rule which would prohibit Deputy Coffey and Officer
Cozart from using the force which they did, when faced with Mr. Poyner=s weapon, they are entitled
to qualified immunity from Section1983 claims; and the trial court erred when
it failed to grant that immunity to them.[7]








Claims against Sheriff Bradford and Chief Wheeler
basically related to matters connected with hiring, supervising, and training
Deputy Coffey and Officer Cozart. 
Unless those policies and practices were entered into or conducted with
conscious disregard or deliberate indifference to the risk that Deputy Coffey
or Officer Cozart would commit the particular constitutional violation in
question, they are entitled to immunity from suit under Section 1983.  Board of the County Commissioners of Bryan
County, Oklahoma v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626, 641
(1997).  Sheriff Bradford and Chief
Wheeler both brought forth summary judgment evidence which established their
hiring, training, and supervision practices. 
Viewing the summary judgment evidence in the light most favorable to
appellee, no fact issue has been raised by the summary judgment evidence that
any of the practices and procedures of which complaint is made were the result
of deliberate indifference on the part of either Sheriff Bradford or Chief
Wheeler.  Sheriff Bradford and Chief
Wheeler are entitled to immunity in connection with the Section 1983 claims,
and the trial court erred when it failed to grant them that immunity.

                                                    PLEA
TO THE JURISDICTION

When determining a plea to the jurisdiction, it is
now clear that we consider not only the plaintiff=s
pleadings but also the evidence before the trial court.  Texas Department of Criminal Justice v.
Miller, supra; Bland Independent School District v. Blue, 34 S.W.3d 547
(Tex.2000).  In Texas Department of
Criminal Justice v. Miller, supra at 964-65, the court stated:  AUnder
Jones, we must examine the plaintiff=s
pleadings to decide whether sovereign immunity has been waived.@  (Citing Texas Department of Transportation v. Jones, 8 S.W.3d
636, 639 (Tex.1999)).  The court also
said that it must Adecide
whether [the plaintiff] has >affirmatively
demonstrate[d] the court=s
jurisdiction to hear the cause=@
and that it will Aconsider
the facts alleged by the plaintiff, and to the extent it is relevant to the
jurisdictional issue, the evidence submitted by the parties.@ See also Texas Natural
Resource Conservation Commission v. White, 46 S.W.3d 864, 868 (Tex.2001).

                                                               Sovereign
Immunity








The government, its agencies, and its officials
are protected from suit under the doctrine of sovereign immunity.  Federal Sign v. Texas Southern University,
supra.  A governmental unit is clothed
with sovereign immunity unless that immunity has been waived by the
legislature.  See City of San Antonio v.
Hernandez, supra; see also Harris County v. Dillard, 883 S.W.2d 166
(Tex.1994).  An employee of a
governmental unit is also entitled to a claim of sovereign immunity in claims
against him in his official capacity. 
McCartney v. May, supra.  The
doctrine of sovereign immunity implicates jurisdictional considerations.  Vincent v. West Texas State University, 895
S.W.2d 469 (Tex.App. B
Amarillo 1995, no writ). 

 The
legislature has provided for waiver of sovereign immunity in certain instances
set forth in the Texas Tort Claims Act.[8]  These instances of waiver are limited and
are narrowly defined.  Texas Department
of Criminal Justice v. Miller, supra. 
It is the prerogative of the legislature to waive or not to waive the
protection afforded by sovereign immunity. 
Federal Sign v. Texas Southern University, supra.   Those instances in which the legislature
has provided for waiver of immunity, as relevant here, are set forth in Section
101.021 of the Texas Tort Claims Act which provides:

A governmental unit in this state is liable for:

 

(1) property damage, personal injury, and death
proximately caused by the wrongful act or omission or the negligence of an
employee acting within his scope of employment if:

 

(A) the property damage, personal injury, or death
arises from  the operation or use of a
motor-driven vehicle or motor-driven equipment; and

 

(B) the employee would be personally liable to the
claimant  according to Texas law; and 

 

(2) personal injury and death so caused by a
condition or use of tangible personal or real property if the governmental unit
would, were it a private person, be liable to the claimant according to Texas
law.

 

Although immunity might be waived under the
provisions of Section 101.021, certain acts are exempted from that waiver of
immunity.  Those circumstances include
instances in which the act complained of is an intentional one.  See Section 101.057(2).








The pleadings and proof did not establish that the
death in this case arose from the operation or use of a motor-driven vehicle or
from a condition or use of tangible personal or real property, except for the
weapons involved.  Even assuming that the
pleadings and evidence showed negligence or other wrongful acts, that conduct
must involve a condition or use of tangible personal or real property.  In Kassen v. Hatley, 887 S.W.2d 4, 14
(Tex.1994), the supreme court stated that Section 101.021 Arequires the property=s condition or use to cause
the injury.@  The fact that some property is involved is
not enough.  As the Miller court
stated:  AUsing
that property must have actually caused the injury.@  Texas
Department of Criminal Justice v. Miller, supra at 965.

In this case, the alleged Ause@
of property was the headlights on patrol vehicles, emergency overhead lights,
and similar uses of the vehicles. 
However, Mr. Poyner=s
death did not Aarise
from@ the use of such
property but, rather, from the intentional use of the weapons.  The use of property must be such that it was
the Adirect device@ causing the death, and
there must be a Acausal
nexus@ for liability;
this has not been established.  Holder
v. Mellon Mortgage Company, 954 S.W.2d 786 (Tex.App. B Houston [14st Dist.] 1997), rev=d on other grounds, 5
S.W.3d 654 (Tex.1999).  Further, it is
not enough that the property merely furnish the condition which makes the
injury possible.  Union Pump Company v.
Allbritton, 898 S.W.2d 773 (Tex.1995); City of San Antonio v. Hernandez,
supra.  Likewise, failure to train,
supervise, perform background checks, and other like claims made by appellee
are not such that implicate the use of tangible personal or real property.  While those are independent causes of action,
under Section 101.021, the requirement that the claim be based upon the
condition or the use of tangible personal or real property remains.  See Texas Department of Public Safety v.
Petta, 44 S.W.3d 575 (Tex.2001).  








The difficulty in applying the Ause@ provisions of the Texas Tort Claims Act has
been the subject of discussion for many years.   We note that the Texas Supreme Court has invited the attention
of the legislature to this difficulty on several occasions.  See Texas Department of Criminal Justice v.
Miller, supra at 966, and cases cited therein. 
The matter of waiver of sovereign immunity is one addressed to the
legislature, and any waiver must be Aby
clear and unambiguous language.@  DeWitt v. Harris County, 904 S.W.2d 650, 652
(Tex.1995). The legislature recently spoke to the issue of clear and
unambiguous language when it enacted Act of June 15, 2001, 77th Leg., R.S., ch.
1158, ' 8, 2001 Tex.
Sess. Law Serv. ___ (Vernon)(to be codified at TEX. GOV=T CODE ANN. '
311.034):

In order to preserve the legislature=s interest in managing
state fiscal matters through the appropriations process, a statute shall not be
construed as a waiver of sovereign immunity unless the waiver is effected by
clear and unambiguous language.  In a
statute, the use of Aperson,@ as defined by ' 311.005 to include
governmental entities, does not indicate legislative intent to waive sovereign
immunity unless the context of the statute indicates no other reasonable
construction.

 

All of the remaining claims except one relate to
the handling, mishandling, or ignoring of information, and similar claims.  Those types of claims have long been held
not to be subject to the waiver provisions of the Texas Tort Claims Act and do
not involve the condition or the use or misuse of tangible personal or real
property.  See Texas Department of
Public Safety v. Petta, supra; see also University of Texas Medical Branch at
Galveston v. York, 871 S.W.2d 175 (Tex.1994).

Those claims pertaining to the use of firearms are
the claims which remain for our discussion in connection with sovereign
immunity.  The pleadings and evidence
suggest nothing other than that the officers intended to shoot Mr. Poyner.  Merely claiming that an act is negligent does
not change its nature.  Medrano v. City
of Pearsall, 989 S.W.2d 141 (Tex.App. B
San Antonio 1999, no pet=n).  While it provides for waiver of sovereign
immunity in certain enumerated circumstances, the Texas Tort Claims Act also
provides that the waiver does not apply in certain instances, such as where the
injury or death is the result of an intentional tort.  See Section 101.057(2). 
An intentional tort, as opposed to negligence, is one in which the actor
has the specific intent to inflict injury. 
Reed Tool Company v. Copelin, 689 S.W.2d 404 (Tex.1985).  The pleadings and evidence before the court
show that Mr. Poyner=s
death was due to an intentional act which has been excluded from the waiver
provisions of the Texas Tort Claims Act.

Because the pleadings and evidence do not show
that sovereign immunity was waived in this case and because the injury and
death was caused by an intentional act, the trial court erred when it did not
grant the pleas to the jurisdiction. 
For the same jurisdictional reasons, Sheriff Bradford, Deputy Coffey, Chief
Wheeler, and Officer Cozart are also entitled to sovereign immunity in their
official capacities. 








For the reasons stated in the above discussion
concerning Section 1983 claims against Sheriff Bradford and Chief Wheeler, we
determine that the trial court also erred when it denied the pleas to the
jurisdiction filed by Eastland County, the City of Gorman, and Dispatch.  We note that, while Dispatch has raised
immunity issues regarding the state claims and the civil rights claims made under
Section 1983, Eastland County and the City of Gorman raised immunity issues
only under the state claims.  However,
Section 1983 immunity is jurisdictional and, therefore, must be addressed and
may be raised at any time. See Monell v. Department of Social Services of the
City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). 

                                         HOLDING
IN CAUSE NO. 11-00-00184-CV

The judgment of the trial court is affirmed in
part and reversed and rendered in part. Insofar as it denied official immunity
to Eastland County Deputy Sheriff Clay Coffey and City of Gorman Reserve
Officer Gerald Cozart, the summary judgment is affirmed.  Insofar as it denied summary judgment as to
Eastland County Sheriff Wayne Bradford and City of Gorman Chief of Police Ken
Wheeler, the judgment of the trial court is reversed and judgment is rendered
granting Sheriff Bradford=s
and Chief Wheeler=s
motions for summary judgment.  The
interlocutory appeal filed by Eastland County Cooperative Dispatch is premature
and is dismissed for want of jurisdiction. 


                                         HOLDING
IN CAUSE NO. 11-00-00284-CV

The judgment of the trial court is reversed, and
judgment is rendered dismissing the suit against Eastland County Cooperative
Dispatch, Eastland County, and the City of Gorman brought by Elnor Maxine
Poyner, Individually and as Independent Executor of the Estate of William Euell
Poyner, and as sole heir of William Euell Poyner. 

 

JIM R. WRIGHT

JUSTICE

 

October 25, 2001

Publish.  See TEX.R.APP.P.
47.3(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.











[1]Although he is the sitting judge of the 91st District
Court, Hon. Steven R. Herod did not hear the motions or pleas made the subject
of these appeals.





[2]Mrs. Poyner is now deceased, and the suits are being
prosecuted by Joan Johnson as executrix of both estates.  Pursuant to the direction of TEX.R.APP.P.
7.1(a)(1), these appeals retain the original styles.





[3]The trial court also denied motions for summary
judgment filed by Eastland County and the City of Gorman.  Those entities are not parties to the appeal
in Cause No. 11-00-00184-CV.  





[4]All references to Section 1983 throughout this opinion
refer to 42 U.S.C.A. ' 1983.





[5]We note that summary judgment evidence similar to that
provided by Sheriff Bradford and Chief Wheeler was held sufficient in
connection with summary judgment proof in City of Hidalgo v. Prado, 996 S.W.2d
364 (Tex.App. B Corpus Christi 1999, no pet=n).  Appellants
also provided the affidavit of another expert witness, Merlyn D. Moore,
Ph.D.  However, that affidavit was
stricken by the trial court, and it will not be considered here.





[6]While this portion of the affidavit actually stated
that no reasonable officer would not have taken the action, it is clear
from the context of the affidavit that the expert witness was expressing the
opinion that Ano reasonable and prudent officer...would have@ created the situation.





[7]In a post-submission letter brief, appellee urges that
the Astate created danger@
doctrine applies to the facts of this case. 
The cases which recognize the Astate
created danger@ doctrine are distinguishable in that in those cases
the State employees created a situation which increased the danger to the
victim from third parties.  Here, no
third parties were involved.  Further,
in those cases  recognizing the
doctrine, the victims played no part in the harm that came to them.  See, e.g., McClendon v. City of Columbia,
258 F.3d 432 (5th Cir. 2001); Piotrowski v. City of Houston, 51 F.3d 512 (5th
Cir. 1995); Johnson v. Dallas Independent School District, 38 F.3d 198 (5th
Cir. 1994).  The Astate created danger@
doctrine does not apply in this case.





[8]All references to the Texas Tort Claims Act refer to
TEX. CIV. PRAC. & REM. CODE ANN. '
101.001 et seq. (Vernon  1997 &
Supp. 2001).