**Maxey Don LAVY and Dorothy Joan Lavy, Appellants,**

v.

**Frank PITTS d/b/a Pitts Oil Company, Appellee.**

No. 11–99–00164–CV.

Court of Appeals of Texas, Eastland.

Oct. 12, 2000.

Rehearing Overruled Nov. 8, 2000.

Franklin L. Broyles, Robert Dawson, Goins, Underkofler, Crawford & Langdon, Dallas, Kenneth Wayne Wigginton, Law Office of Ricky G. Bunch, Wichita Falls, for appellant.

Charles W. Fillmore, H. Dustin Fillmore, Fillmore Law Firm, David Joseph Pels, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

TERRY McCALL, Justice.

Maxey Don Lavy and his wife, Dorothy Joan Lavy, appeal the trial court's no-evidence summary judgment in favor of Frank Pitts d/b/a Pitts Oil Company (Pitts). We affirm.

### Background Facts

Pitts owned a working interest in some oil leases in Palo Pinto County. Two joint venture agreements between Pitts and other working interest owners designated Pitts as the "operator" of the ventures. The joint venture agreements gave Pitts:

> [F]ull and complete power and authority to direct, supervise, manage, control and operate the business of the Venture, and the scope of such power and authority shall encompass all matters in any way connected with such business or incident thereto.

The joint venture agreements also gave Pitts the right to "delegate all or any part of the power and authority" to Dallas Production, Inc. (DPI).

Pitts contracted with DPI to operate the wells. Pitts and DPI utilized an American Association of Petroleum Landmen (A.A.P.L.) "Model Form Operating Agreement" to memorialize their agreement. The A.A.P.L. agreement designated DPI as the "Operator" and Pitts as the "Non–Operator." The A.A.P.L. agreement provided in part:

> Dallas Production, Inc. shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner.

* * *

> The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

Lavy worked as a pumper for DPI. On May 13, 1991, while going about his routine check of production operations on the ranch, Lavy heard a strange noise coming from a high pressure separator. Lavy drove his pickup down the service road to the separator and parked on the road between the separator and an oil condensate storage tank. Lavy left the engine running. As Lavy inspected the separator, an explosion occurred, badly injuring him and his grandson, who was sitting in the pickup.[1] The sound Lavy heard was leaking hydrocarbon vapors. The vapors pooled between the tank and separator, and the running engine of Lavy's pickup ignited them.

Lavy sued Pitts under a premises liability theory. Lavy alleged that the pooled vapors were a dangerous condition created by the work of DPI and that the placement of the service road between the tank and separator made the condition even more dangerous. Lavy also alleged that Pitts retained the right to control the production operations and owed him, as an invitee, a duty of reasonable care to either remedy the dangerous condition or to warn him of the condition. Lavy contended that Pitts should have required DPI to employ a "drip pot" and earthen berms to contain any leaking vapors or that Pitts should have required DPI to erect a fence to prevent vehicles from driving between the tank and separator. Lavy moved for partial summary judgment on the issue of liability. Pitts responded to the motion and disclaimed any duty to Lavy. Pitts also moved for summary judgment under TEX.

---

1. Lavy's grandson, Landon Paul Goad, Jr., sued Pitts and DPI through his parents as next friends. Goad nonsuited his claim and is not a party to this appeal.

R.CIV.P. 166a(i), arguing that there was no evidence that he owed Lavy a duty of care. The trial court denied Lavy's motion and granted Pitts' motion.

### Objections to Pitts' Motion for Summary Judgment

Lavy argues in his first issue that the trial court erred in granting Pitts' motion for a no-evidence summary judgment because the motion failed to comply with the requirements of Rule 166a(i). The rule provides that "[t]he motion must state the elements as to which there is no evidence." Lavy argues that Pitts failed to adequately specify which grounds were unsupported by evidence. He also argues that a " 'no-evidence' movant is obligated to discuss the evidence and why it fails to provide evidence of one or more of the essential elements." Pitts argues that Lavy failed to preserve error on this issue.

■■■ To complain that summary judgment grounds are unclear, a non-movant must except to the motion. *Harwell v. State Farm Mutual Automobile Insurance Company*, 896 S.W.2d 170, 175 (Tex. 1995); *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 342 (Tex.1993). The rationale behind these cases is that summary judgment practice requires parties to assert their positions in writing. See *McConnell v. Southside Independent School District*, supra at 343 n. 7. Exceptions to the summary judgment motion must be brought to the trial court's attention before the summary judgment hearing. *McConnell v. Southside Independent School District*, supra. Lavy did not request the trial court to rule on his objection to Pitts' no-evidence motion until during the hearing on Lavy's motion for rehearing. Lavy failed to preserve error. TEX.R.APP.P. 33.1; *McConnell v. Southside Independent School District*, supra.

■■■ Moreover, Lavy's objections have no merit. Lavy sued Pitts under several theories, including premises liability, negligent activity, and negligent hiring and re-

tention. Pitts' no-evidence motion sets forth 15 elements, each of which relates to one or more of those theories. Further, Pitts' no-evidence motion is appended to his response to Lavy's traditional summary judgment motion. The response sets forth the applicable law and attempts to rebut Lavy's contentions. Finally, although a conscientious movant for no-evidence summary judgment might discuss the lack of evidence on each contested element, the rule does not require him to do so. We overrule Lavy's first issue.

### Standard of Review

■■■ Lavy argues in his second and third issues that the trial court erred in granting the no-evidence summary judgment and in overruling his motion for rehearing. In assessing the propriety of a no-evidence summary judgment, we review only evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614 (Tex.App.—Eastland 2000, pet'n filed). We review the evidence presented by the non-movant in reply to the no-evidence motion for summary judgment in the same way we review evidence offered in support of and in response to a traditional motion for summary judgment: we accept as true evidence favorable to the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, supra; see *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). If the non-movant presents evidence that is more than a scintilla, a no-evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic*, supra; *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298 (Tex.App.—Eastland 1999, no pet'n); see *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

*Owner/Occupier's Duty to Employees
of an Independent Contractor*

■ This case arose before the 1996 adoption of TEX.CIV.PRAC. & REM. CODE ANN. ch. 95 (Vernon 1997)[2] and is governed by the principles set forth in *Koch Refining Company v. Chapa*, 11 S.W.3d 153 (Tex.1999), and *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997). *Olivo* informs us that an owner or occupier[3] of premises may be liable to the employees of an independent contractor[4] whose injuries arise from either a negligent activity conducted on the premises or a premises defect. *Williams v. Olivo*, supra at 527. *Olivo* divided premises defects into two categories, and Lavy argues that this is a "second-category" case where the work of the independent contractor or its injured employee created the defect. *Williams v. Olivo*, supra at 527. In either a second-category premises defect case or a negligent activity case, Pitts would have owed Lavy no duty of care unless Pitts had contractually retained the right to control the details of DPI's and Lavy's work or unless Pitts had actually exercised control over the work. *Koch Refining Company v. Chapa*, supra; *Williams v. Olivo*, supra at 528.

Texas has adopted RESTATEMENT (SECOND) OF TORTS § 414 (1965) which states:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Hoechst–Celanese Corporation v. Mendez*, 967 S.W.2d 354, 356 (Tex.1998); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985). The duty outlined in Section 414, comment c, however, is limited:

In order for the rule ... to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Section 414, comment c, *quoted in Hoechst–Celanese Corporation v. Mendez*, supra at 356. The supreme court recently quoted Section 414, comment c again and restated the limitation: "Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *Koch Refining Company v. Chapa*, supra at 156.

*Evidence Produced by Lavy*

■ In response to Pitts' no-evidence motion for summary judgment, Lavy produced the joint venture agreements, the A.A.P.L. agreement, and excerpts from several depositions, including those of Pitts and Donald C. Apeland, the general counsel for DPI. Lavy also produced "AUTHORIZATION FOR EXPENDITURE"

**2.** See *Fisher v. Lee and Chang Partnership*, 16 S.W.3d 198 (Tex.App.—Houston [1st Dist.] 2000, pet'n den'd), and *Kelly v. LIN Television of Texas*, 27 S.W.3d 564, (Tex.App.—Eastland, 2000, pet'n filed)n.

**3.** A general contractor in control of the premises owes the same duty as an owner or occupier. *Williams v. Olivo*, supra at 527;

*Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). Like Williams was in *Olivo*, Pitts is an occupier and a general contractor.

**4.** The parties stipulated that Lavy was an employee of DPI and that he was neither an employee nor a "borrowed servant" of Pitts.

sheets signed by Pitts. Lavy contends that Pitts either retained or exercised sufficient control over the production operations to owe Lavy a duty of reasonable care. We disagree.

First, Lavy argues that the joint venture agreements vested complete control of the production operations in Pitts. As set forth above, the joint venture agreements gave Pitts the right to delegate any or all of his "power and authority" to DPI. The A.A.P.L. agreement gave DPI authority to "conduct and direct and have full control of all operations." By the terms of the A.A.P.L. agreement, Pitts delegated all control over the production operations to DPI. Apeland testified that Pitts retained no control over the operations and exercised no control over the operations. See *Johnstson v. American Cometra, Inc.*, 837 S.W.2d 711, 716 (Tex.App.—Austin 1992, writ den'd), stating that the intention of the A.A.P.L. agreement is "to delegate operational and managerial control to the operator with the intent of shielding the non-operators from liability."

The A.A.P.L. agreement between Pitts and DPI, however, added the following language to the form agreement:

> Operator may be removed if it fails or refuses to carry out its duties hereunder:
>
> * * *
>
> Operator will be considered to have failed or refused to carry out it (sic) duties hereunder only if it continues to fail or refuses to carry out a material obligation hereunder for thirty (30) days after receiving notice from a Non Operator with respect to such failure or refusal.

Lavy next argues that, because the A.A.P.L. agreement allowed Pitts to remove DPI as operator if DPI failed to conduct the production operations in a "good and workmanlike manner," Pitts retained sufficient control over the operations to owe Lavy a duty.

The supreme court has consistently required that any control exercised by a premises owner or occupier over the safety of an independent contractor's work must be related to the injury suffered by the independent contractor's employee if a duty is to be imposed on the owner or occupier. *Hoechst–Celanese Corporation v. Mendez*, supra; *Exxon Corporation v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993); *Tovar v. Amarillo Oil Company*, 692 S.W.2d 469, 470 (Tex.1985). *Mendez* looked at the reasoning of *Tidwell* and *Tovar* to hold that the scope of an owner or occupier's duty toward the employees of an independent contractor is limited by the scope of any retained supervisory control. For example, the *Tidwell* court remanded the case for a "more precise" determination of the extent of Exxon's control over the safety and security of the premises. *Hoechst–Celanese Corporation v. Mendez*, supra at 357; *Exxon Corporation v. Tidwell*, supra. The *Tovar* court imposed a duty where the injury was caused by the failure of a lease owner to enforce a "specific, critical safety provision in the drilling contract." *Hoechst–Celanese Corporation v. Mendez*, supra at 357; *Tovar v. Amarillo Oil Company*, supra.

The *Mendez* court held:

> Under this view, an employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract. Also, an employer who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent contractor employee a duty of reasonable care to protect him from work-related hazards. (Citations omitted)

*Hoechst–Celanese Corporation v. Mendez*, supra at 357.

The broad requirement in the A.A.P.L. agreement that DPI perform in a good and workmanlike manner does not necessarily

implicate safety concerns. A warranty to perform in such a manner generally refers to "the quality of the work, not to negligent acts which do not concern quality but which may cause injury to others." *Exxon Corporation v. Roberts*, 724 S.W.2d 863, 870 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.); *Transworld Drilling Co. v. Levingston Shipbuilding Co.*, 693 S.W.2d 19, 22 (Tex.App.—Beaumont 1985, no writ). Thus, Pitts' ability to remove DPI for failing to perform in a good and workmanlike manner did not necessarily give Pitts the authority to remove DPI for violating safety rules, regulations, or procedures.

The evidence produced by Lavy in response to Pitts' no-evidence motion for summary judgment failed to show that Pitts had any knowledge of the day-to-day operations of DPI. The evidence also failed to show that Pitts exercised any control over DPI's operations or gave any detailed instructions to DPI about how to conduct its business. The authorization for expenditure sheets produced by Lavy only showed that Pitts exercised control over the expenditures for which he was accountable under the A.A.P.L. agreement. The expenditure estimates related only to the cost of operations, not to the method. In short, the record fails to show any evidence of the "nexus" between any control retained by Pitts and a duty of care owed to Lavy. See *Hoechst–Celanese Corporation v. Mendez*, supra at 356.

Finally, Lavy argues that, because Pitts served on the board of DPI and owned a controlling interest in DPI, Pitts actually exercised control over the operations. DPI, however, is a separate legal entity from Pitts. Lavy failed to plead alter ego or any other theory to pierce the corporate veil. Thus, Lavy cannot now attempt to charge Pitts with knowledge of DPI's acts and omissions that might have led to Lavy's injuries. See *Castleberry v. Branscum*, 721 S.W.2d 270, 275 n. 5 (Tex.1986).

### Judicial Admission by Pitts

Lavy argues that, in Pitts' response to Lavy's motion for summary judgment, Pitts judicially admitted that the A.A.P.L. agreement was a joint venture agreement between him and DPI. Lavy argues that this statement estops Pitts from denying knowledge or control of DPI's operations because joint venturers are charged with a mutual right to control. See *Ayco Development Corporation v. G.E.T. Service Company*, 616 S.W.2d 184, 186 (Tex.1981). Lavy argues that, because the statement is contained in a live pleading and was not superseded or withdrawn, it is a judicial admission. See *Sosa v. Central Power & Light*, 909 S.W.2d 893, 895 (Tex.1995).

The purported admission reads, in pertinent part: "The joint venture agreement between DPI (sic) and the other working interest owners did not create any duty to Plaintiffs." Lavy did not rely on this statement during the hearing on the motions for summary judgment, but he did bring it to the trial court's attention during the hearing on his motion for rehearing. When confronted with the statement, Pitts' attorney stated that "it was a typographical error." The statement seems to be a typographical error because DPI was not a working interest owner. No judicial admission was made that could defeat Pitts' no-evidence motion for summary judgment. We overrule Lavy's second and third issues.

### This Court's Ruling

The judgment of the trial court is affirmed.