EASTLAND COUNTY COOPERATIVE DISPATCH, Clay Coffey, Wayne Bradford, Ken Wheeler, and Gerald Cozart, Appellants,

v.

Elnor Maxine POYNER, Individually and as Independent Executor of the Estate of William Euell Poyner, and as sole heir of William Euell Poyner,[1] Appellee.

Eastland County Cooperative Dispatch, Eastland County, and the City of Gorman, Appellants,

v.

Elnor Maxine Poyner, Individually and as Independent Executor of the Estate of William Euell Poyner, and as sole heir of William Euell Poyner, Appellee.

Nos. 11–00–00184–CV, 11–00–00284–CV.

Court of Appeals of Texas, Eastland.

Oct. 25, 2001.

Rehearing Overruled Jan. 10, 2002.

<hr />

1. Mrs. Poyner is now deceased, and the suits are being prosecuted by Joan Johnson as executrix of both estates. Pursuant to the direction of TEX.R.APP.P. 7.1(a)(1), these appeals retain the original styles.

James T. Jeffrey, Law Offices of Jim Jeffrey, Arlington, for Eastland County Cooperative Dispatch.

Stephen D. Henninger, Tom Brandt, Fanning, Harper & Martinson, P.C., Dallas, for Eastland County, Wayne Bradford and Clay Coffey.

Joseph E. Byrne, Wendy H. Hermes, Berry, Byrne & Randall, Dallas, for City of Gorman, Ken Wheeler and Gerald Cozart.

James J. Elliott, Richard D. Coan, Coan & Elliott, L.L.P., Garry Lewellen, McMillan & Lewellen, Stephenville, for Appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

WRIGHT Justice.

These appeals arise from the suit Elnor Maxine Poyner filed following the death of her husband William Euell Poyner who was killed in an armed encounter with law enforcement officers. Eastland County Cooperative Dispatch, Eastland County Sheriff Wayne Bradford, Eastland County Deputy Sheriff Clay Coffey, City of Gorman Chief of Police Ken Wheeler, and City of Gorman Reserve Officer Gerald Cozart moved for summary judgment and asserted various immunity claims. The trial court denied all motions for summary judgment, and No. 11–00–00184–CV is the interlocutory appeal from that order pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) (Vernon Supp.

2001).[3] For the reasons stated in this opinion, we affirm the judgment denying official immunity to Deputy Coffey and Officer Cozart, but we reverse the judgment denying the motions for summary judgment in all other respects and dismiss those claims against all appellants. Eastland County Cooperative Dispatch is a governmental unit, and we do not have jurisdiction to hear its interlocutory appeal. See Section 51.014(a)(5). The appeal is dismissed as to Eastland County Cooperative Dispatch.

By a 1997 amendment to TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (Vernon Supp.2001), the legislature added Section 51.014(a)(8) which provides that a governmental unit may file an interlocutory appeal from the denial of a plea to the jurisdiction. See Section 51.014(a)(8). See also *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 586 n. 2, 44 Tex. Sup.Ct. J. 963, 964 n. 2 (2001). Eastland County, the City of Gorman, and Eastland County Cooperative Dispatch each filed pleas to the jurisdiction claiming immunity. The trial court denied those pleas to the jurisdiction, and No. 11–00–00284–CV is the appeal from those rulings. For the reasons stated in this opinion, we reverse the trial court's ruling upon the pleas to the jurisdiction and render judgment dismissing the claims against Eastland County, the City of Gorman, and Eastland County Cooperative Dispatch.

Because the resolution of each of these appeals involves common questions, although under somewhat different standards of review, we will consider them together. We will first address the summary judgment rulings, and then we will discuss the rulings on the pleas to the jurisdiction.

## MOTIONS FOR SUMMARY JUDGMENT

### Standard of Review

The standard of review in cases in which the trial court has denied a motion for summary judgment is the same standard used to review the granting of a motion for summary judgment. *City of San Antonio v. Hernandez*, 53 S.W.3d 404 (Tex.App.—San Antonio 2001, pet'n den'd); see also *Bartlett v. Cinemark USA, Inc.*, 908 S.W.2d 229 (Tex.App.—Dallas 1995, no writ). The question is whether the movant has met its burden of showing that there are no genuine issues of material fact and that judgment should be granted as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985). All evidence favorable to the non-movant must be taken as true, and all reasonable doubts must be resolved in favor of the non-movant. *Nixon v. Mr. Property Management Company, Inc.*, supra.

In order to prevail upon a motion for summary judgment based upon an affirmative defense, the movant must come forward with summary judgment evidence for each element of the affirmative defense. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nichols v. Smith*, 507 S.W.2d 518 (Tex.1974). If the movant conclusively establishes the defense, then it is incumbent upon the non-movant to come forward with summary judgment evidence to the contrary. *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50 (Tex. 1970)

Appellants filed their motions for summary judgment in accordance with TEX.

---

**3.** The trial court also denied motions for summary judgment filed by Eastland County and the City of Gorman. Those entities are not parties to the appeal in Cause No. 11–00–00184–CV.

R.CIV.P. 166a(c) ("traditional" motion for summary judgment) and also in accordance with TEX.R.CIV.P. 166a(i) (a "no-evidence" motion for summary judgment), alleging that appellee had no evidence on one or more elements of the causes of action. Because our holding in connection with the "traditional" motions for summary judgment is dispositive of this appeal except as to Deputy Coffey and Officer Cozart, we need only discuss the "no-evidence" aspect of appellants' motions for summary judgment as to them.

The summary judgment evidence presented in this case reveals that 96–year-old William Euell Poyner died as a result of gunshot wounds which he received during a confrontation with law enforcement personnel. Mr. Poyner and his wife, Elnor Maxine Poyner, lived in Eastland County, just outside the city limits of the City of Gorman. Mrs. Poyner was 81 years old. On the night of the shooting, Mrs. Poyner telephoned the Gorman Police Department. The summary judgment evidence showed that the call was made at 10:39 p.m. Calls to the Gorman Police Department were forwarded to the Eastland County Cooperative Dispatch, a governmental unit created pursuant to what is now TEX. GOV'T CODE ANN. § 791.001 et seq. (Vernon 1994 & Supp.2001). Dispatch provided 9–1–1 services within Eastland County; and it also conducted the law enforcement dispatch business for certain governmental bodies, including the County of Eastland and the City of Gorman.

When she talked to the Dispatch employee, Mrs. Poyner informed him that Mr. Poyner mistakenly thought that she was involved with other men. She told Dispatch that, on this particular night, she had awakened Mr. Poyner to get him to stop snoring. Other summary judgment evidence shows that she eventually went into another room to sleep and turned the

light off in the bedroom. Shortly after that, she noticed that the light in the bedroom was on again. When she went into the bedroom, Mrs. Poyner noticed that Mr. Poyner was fully dressed and was looking through a drawer for his "six shooter." She told Dispatch that Mr. Poyner had been looking for the "six shooter," that he had found another gun, and that he was probably out "on the carport."

Lights from vehicles traveling down the highway in front of the Poyner's house would shine into their house, and Mr. Poyner thought that these lights were signals from Mrs. Poyner's boyfriends for her to come out. This particular night was high school graduation night, and there was a lot of traffic on the highway. Although he could not find his "six shooter," Mr. Poyner did find a shotgun. He told Mrs. Poyner: "I'm going to stop this tonight." Mrs. Poyner told Dispatch how to get to their house and that she would leave the porch light on.

Gorman Police Officer Abel Saldana arrived at the Poyner residence first. After the Dispatch employee talked with Mrs. Poyner, Deputy Coffey was dispatched to the Poyner home. Eventually, Deputy Coffey and Officer Cozart arrived at the scene. Eastland County Constable Tipton was also there. The officers' vehicles were parked in such a manner that the headlights were shining toward the Poyner's house. Officer Cozart's vehicle was parked so that the headlights were shining at the back of the house. The red and blue emergency lights were turned off on all of the law enforcement vehicles, and Mr. Poyner had turned the lights off inside the house.

When Officer Saldana talked with Mrs. Poyner, she appeared to be shaking and nervous. She told Officer Saldana that he needed to talk to Mr. Poyner and that Mr. Poyner had a gun and was accusing her of

running around on him. Mrs. Poyner was placed in a safe place away from the house, and Mr. Poyner was still in the house.

While Deputy Coffey was talking to Mrs. Poyner, Officer Cozart told the others that Mr. Poyner was coming out of the house and that he had either a rifle or a shotgun. Mr. Poyner came out of the house very slowly and walked in a slow shuffling movement, which was his usual way of walking. Deputy Coffey came to the back of the house and began to approach Mr. Poyner.

The summary judgment evidence presented by appellants shows that the officers told Mr. Poyner to drop the gun and called his name several times. Mr. Poyner suffered from a hearing problem, and that information had been conveyed to Deputy Coffey. Summary judgment evidence presented by appellee contains the statements as well as the deposition testimony of two non-law enforcement personnel. These witnesses testified that they did not hear the officers identify themselves nor did they hear the officers order Mr. Poyner to drop his weapon. However, the witnesses also said that they could not say that the command was not given and that, because they were on the other side of the house, they might not have heard it. The summary judgment record reveals that Officer Cozart first saw Mr. Poyner begin to raise his weapon to a firing position and that the officers began to fire multiple rounds at Mr. Poyner. The summary judgment evidence conclusively establishes that no other persons were in a position to see whether Mr. Poyner raised his weapon to a firing position prior to being fired upon by the officers. Mr. Poyner died as a result of the gunshot wounds.

Mrs. Poyner, for herself and as executrix of Mr. Poyner's estate, sued appellants and sought damages under 42 U.S.C.A. § 1983 et seq. (West Pamph. Supp.2001), as well as for damages under state law brought about by claims of varying degrees of negligence and culpability of those persons and entities involved.[4] Each appellant filed motions for summary judgment. The motions for summary judgment implicated the doctrines of sovereign immunity, official immunity, and qualified immunity. The trial court denied all of the motions for summary judgment without giving reasons for denying the motions.

The petition filed in the trial court by appellee contained multiple allegations. Although the petition does not constitute summary judgment evidence, we feel that it is appropriate to an understanding of the issues on appeal for us to detail the allegations made against appellants by appellee. Further, it is necessary for us to discuss the allegations in connection with the pleas to the jurisdiction filed by the governmental units.

The live petition contained general allegations of wrongful acts of appellants and others, followed by certain specifically-enumerated allegations, and then follow other additional general allegations of wrongful acts. Generally, the allegations were that the officers at the scene trespassed with vehicles belonging to Eastland County and the City of Gorman and that they shined the headlights of the vehicles onto Mr. Poyner's property and into his face so that he could not identify those present as law enforcement officers. Further, appellee alleged that the officers intentionally and knowingly disguised their identity. Appellee also maintained that the officers used large caliber weapons to shoot and kill Mr. Poyner with reckless abandon. Appellee alleged that all of the conduct named "was done negligently, with reckless disregard

4. All references to Section 1983 throughout this opinion refer to 42 U.S.C.A. § 1983.

and conscious indifference to the rights of Decedent."

Appellee also stated in the petition that the shooting was committed through the gross negligence of the officers, as well as through the incompetence of the officers, with conscious indifference to Mr. Poyner's rights. Further, appellee complained that, through the gross negligence of the City of Gorman, Eastland County, and Dispatch, false information was knowingly and with reckless disregard and conscious indifference to Mr. Poyner's rights transmitted to the responding officers, creating a false impression in the minds of the responding officers. In other general allegations, appellee stated that the City of Gorman, Eastland County, and Dispatch negligently and with conscious indifference to Mr. Poyner broadcasted false and misleading information throughout the entire episode.

The allegations further complained of a negligent entrustment by the City of Gorman, Eastland County, Sheriff Bradford, and Chief Wheeler. Appellee also alleged that the named parties were negligent in hiring and in arming Deputy Coffee and Officer Cozart when they should have known of their incompetency, their inadequate training, and their propensity to "make mistakes and panic." Appellee alleged that such conduct was unconscionable.

Appellee also alleged in her pleadings that Eastland County and the City of Gorman hired incompetent and mentally unstable officers and that those officers failed to heed advice given to them regarding the fact that there was a lack of any threat from Mr. Poyner. Appellee further alleged that the officers ignored information given to them regarding Mr. Poyner's physical condition. Appellee also pleaded that the officers failed to identify themselves to Mr. Poyner and that they also failed to advise him of the nature of their visit. The general allegations also provided that the officers created a situation in which Mr. Poyner could not identify them by failing to display their emergency overhead lights.

In 22 specifically numbered allegations, appellee alleged negligence against all parties, except Dispatch. We quote those allegations exactly as they appeared in the live petition:

1. Negligent entrustment;

2. Negligent hiring;

3. Negligent in failing to check background of their police officers;

4. Negligent in failing to supervise their police officers and other employees;

5. Negligent in failing to properly train their police officers and other employees;

6. Negligent handling of citizen requests for assistance;

7. Negligently dispatching of officers;

8. Negligently drawing inaccurate conclusions and broadcasting the opinions and biases of the dispatch instead of the information received from Plaintiff;

9. Negligent in gross misrepresentations of fact to responding officers;

10. Negligent in using excessive force;

11. Negligent in not following usual and standard police methods and procedures, including methods involving the least necessary force;

12. Negligent use of firearms;

13. Negligent use of official vehicles;

14. Failure to warn the Decedent;

15. Wrongful entry on the Decedent's property without a warrant;

16. Use of excessive force;

17. Negligently failing to heed the advice and warnings of other officers who warned that the Decedent was old and deaf and could not hear officers;

18. Negligently failing to assess the situation, including the lack of any threat posed by Decedent and the physical condition of Decedent;

19. Failure to remove the officers that committed the homicide from active duty;

20. Allowing the officers who committed the homicide to participate in the crime scene investigation and, in fact, allowing them to control the crime scene and access evidence;

21. Negligently acting in a state of panic and failure to exercise standard police procedure; and

22. Negligent training and supervision.

In 16 separately enumerated paragraphs, appellee alleges negligence against Dispatch. We again quote those allegations exactly as they appeared in the live petition:

1. Negligent entrustment;

2. Negligent hiring;

3. Negligent in failing to check background of their officers and employees;

4. Negligent in failing to supervise their officers and other employees;

5. Negligent in failing to properly train their officers and other employees;

6. Negligent handling of citizen requests for assistance;

7. Negligent dispatching of officers;

8. Negligently drawing inaccurate conclusions and broadcasting the opinions and biases of the dispatch and dispatch personnel instead of the information received from Plaintiff;

9. Negligent in gross misrepresentations of fact to responding officers;

10. Negligent in using or causing to be used excessive force;

11. Negligent in not following usual and standard police methods and procedures, including methods to advise offi-

cers properly so as to involve the least necessary force.

12. Use or causing to be used of excessive force;

13. Negligently failing to heed the advice of Plaintiff;

14. Negligently failing to assess the situation, including the lack of any threat posed by Decedent and the physical condition of Decedent;

15. Negligently acting in a state of panic or excitement and failure to exercise standard police procedure; and

16. Negligent training and supervision.

Following those specifically enumerated allegations, appellee continued with additional general allegations. Appellee contended that the City of Gorman, Eastland County, Sheriff Bradford, and Chief Wheeler failed to give advice to their officers regarding coping with the stress of their jobs; that they failed to maintain proper policies or that the policies were inadequate regarding such things as use of deadly force and use of emergency overhead lights on the police vehicles; that they failed to evaluate the psychiatric, psychological, and emotional stability of the officers, including alcohol abuse and anger control; that Eastland County and the City of Gorman wrongfully delegated its duties to Dispatch and their untrained, uncertified employees; that the City of Gorman, Eastland County, Sheriff Bradford, and Chief Wheeler conspired to create a cover-up; that the officers improperly used cover; that the officers improperly advanced upon the victim; and that the officers failed to use a non-lethal means to resolve the issue.

With this background for an understanding of the nature of the case and bearing in mind the standard of review in cases involving the denial of motions for summary judgments and pleas to the juris-

diction based on immunity, we will examine the various types of immunity claims involved.

### Immunity Generally

■ Governmental immunity is a common-law rule. *Harris County Flood Control District v. Mihelich*, 525 S.W.2d 506 (Tex.1975). Governmental immunity encompasses both sovereign immunity and official immunity. *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex. 1997); *Delaney v. University of Houston*, 835 S.W.2d 56 (Tex.1992). As we will discuss later, governmental units are immune from suit in certain circumstances, and qualified immunity also is available for individuals under Section 1983. Therefore, in reaching a resolution of this case, we must examine and discuss three types of immunity: (1) official immunity, (2) qualified immunity, and (3) sovereign immunity.

### OFFICIAL IMMUNITY

#### 1. Traditional Summary Judgment

We must first determine whether Sheriff Bradford, Deputy Coffey, Chief Wheeler, and Officer Cozart are protected from individual liability in this case by virtue of the doctrine of official immunity. They have been sued not only in their official capacities but also in their individual capacities.

■ Unlike sovereign immunity, the doctrine of official immunity is not a bar to suit (a jurisdictional issue) but is a bar to liability and shields the party claiming official immunity from liability in the suit individually. *McCartney v. May*, 50 S.W.3d 599 (Tex.App.—Amarillo 2001, no pet'n). Official immunity is an affirmative defense which protects government employees, in their individual capacities, from liability related to: (1) the performance of discretionary duties, (2) within the scope of the employee's authority, (3) if the employee acts in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994). Because it is an affirmative defense, the burden is upon the movant to establish each element of the defense. *Nichols v. Smith*, supra. If the movant establishes the defense, then the non-movant must come forward with summary judgment evidence to the contrary. *Torres v. Western Casualty and Surety Company*, supra.

■ First, we hold that the officers have shown that they were performing discretionary functions and that there is no summary judgment proof to the contrary. Officials perform discretionary acts when the actions are those which involve "personal deliberation, decision, and judgment." See *Vasquez v. Hernandez*, 844 S.W.2d 802, 804 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.).

■ Next, we hold that the officers have shown that they were performing those discretionary duties within the scope of their authority. Officers act within the scope of their authority if they are discharging duties generally assigned to them. *City of Lancaster v. Chambers*, supra. The question then becomes whether the officers acted in good faith.

■ In official immunity cases, good faith is measured against a standard of objective legal reasonableness, and the subjective state of mind of the officer is irrelevant. *City of Lancaster v. Chambers*, supra. The test for good faith is analogous to an abuse of discretion standard. An officer acts in bad faith only if he could not have reasonably reached the decision in question. *University of Houston v. Clark*, 38 S.W.3d 578 (Tex.2000).

■ In order to establish the "good faith" element of their defense of official immunity, it was necessary for the officers to establish that a reasonably prudent offi-

cer could have believed that his or her actions were justified under the circumstances. *City of Lancaster v. Chambers,* supra; *Alamo Workforce Development, Inc. v. Vann,* 21 S.W.3d 428 (Tex.App.—San Antonio 2000, no pet'n). Once the officers establish that element, the non-movant must come forward with summary judgment evidence which shows "that no reasonable person in the officer's position could have thought that the facts justified the officer's acts." *University of Houston v. Clark,* supra at 581.

The summary judgment evidence shows that, on the night of the shooting, Sheriff Bradford requested that Texas Ranger Bobby Grubbs conduct an investigation into the events of the evening. Ranger Grubbs performed that investigation, and the summary judgment evidence details his credentials and his investigation. After giving the details of his investigation, Ranger Grubbs testified that both Deputy Coffey and Officer Cozart acted as reasonable officers based on the information they had at the time. He saw nothing that would indicate that the use of force was not justified, and he also testified that all of the evidence considered by him shows that the use of force was justified.

The summary judgment evidence also shows that Sheriff Bradford was of the same opinion regarding Deputy Coffey and stated that: "In my opinion, a reasonably prudent police officer, in the same situation as Deputy Coffey, could have believed that his actions were justified." Sheriff Bradford further testified regarding his hiring, training, and supervising practices. His testimony was also to the effect that,

at all times pertaining to this lawsuit, Officer Coffey's actions were reasonable, proper, and necessary in connection with the performance of his duties.

Chief Wheeler also provided summary judgment evidence. His testimony was that Officer Cozart acted reasonably with respect to the incident made the basis of this lawsuit and that Officer Cozart's use of his firearm was justified. He also testified regarding the policies of the Gorman Police Department, and it was his opinion that neither he nor any of his officers committed any act which constituted either negligence or proximate cause of any injury connected with the incident made the basis of this lawsuit.[5]

After appellants produced the summary judgment evidence outlined above, it was incumbent upon appellee to come forward with summary judgment evidence "that no reasonable person in the officer's position could have thought that the facts justified the officer's acts." *University of Houston v. Clark,* supra at 581. Appellee's summary judgment evidence included an affidavit from an expert witness on law enforcement, Danny B. Steffenauer. Steffenauer outlined his credentials and gave the basis for his expert opinion. He swore that there was a lack of any sufficient policy in the Eastland County Sheriff's Office or the City of Gorman regarding deadly force and armed encounters. It was also Steffenauer's opinion that this lack was a negligent and proximate cause of the confrontation and the death of Mr. Poyner. He is of the further opinion that:

> [N]o reasonable and prudent police officer, acting under the same or similar

---

**5.** We note that summary judgment evidence similar to that provided by Sheriff Bradford and Chief Wheeler was held sufficient in connection with summary judgment proof in *City of Hidalgo v. Prado,* 996 S.W.2d 364 (Tex. App.—Corpus Christi 1999, no pet'n). Appellants also provided the affidavit of another expert witness, Merlyn D. Moore, Ph.D. However, that affidavit was stricken by the trial court, and it will not be considered here.

circumstances as those confronting the officers at the Poyner residence, would not have created or permitted such a fact situation ... which raised an issue of the need to use deadly force at all against [Mr.] Poyner. Poyner's death could have been avoided, without resorting to deadly force, had such officers followed even the most elemental concepts of the use of deadly force.[6]

The affidavit sets forth the details upon which Steffenauer bases his opinion.

Steffenauer's expert opinion was directed toward the policies of Eastland County and the City of Gorman and at the actions of Deputy Coffey and Officer Cozart while at the scene. Sheriff Bradford's and Chief Wheeler's summary judgment evidence regarding official immunity was not controverted by proof that no reasonable officer acting under the same or similar circumstances could have believed that the decisions which they made at any point in time complained of in this lawsuit were proper. The trial court erred when it failed to grant official immunity to Sheriff Bradford and Chief Wheeler in their individual capacities. Because appellee came forward with summary judgment proof to controvert the official immunity claims of Deputy Coffey and Officer Cozart, the trial court did not err in overruling their motions for summary judgment relating to official immunity from personal liability.

### 2. Deputy Coffey's and Officer Cozart's "No Evidence" Motions for Summary Judgment

■ Because we have held that Deputy Coffey and Officer Cozart were not entitled to summary judgment under their "traditional" motions for summary judgment, it is necessary for us to discuss their claims to summary judgment under TEX. R.CIV.P. 166a(i) "no-evidence" motions for summary judgment. In this connection, we view only the evidence presented by the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614 (Tex.App.—Eastland 2000, pet'n den'd). We will accept as true evidence that is favorable to non-movants, and we will indulge every reasonable inference and resolve all doubts in favor of non-movants. *Lavy v. Pitts*, 29 S.W.3d 353, 356 (Tex.App.—Eastland 2000, pet'n den'd). A no-evidence summary judgment is not proper if the non-movant presents more than a scintilla of evidence in answer to the motion for summary judgment. *Lavy v. Pitts*, supra. We have set forth the non-movant's summary judgment evidence. We again hold that appellee has presented more than a scintilla of evidence to prevent the application of the doctrine of official immunity to the individual claims against Deputy Coffey and Officer Cozart and that neither officer was entitled to a no-evidence summary judgment on this claim.

### SECTION 1983 CLAIMS

■ We now review the trial court's action when it denied the motions for summary judgment filed by Sheriff Bradford, Chief Wheeler, Deputy Coffey, and Officer Cozart in connection with the Section 1983 claims. Those motions were based, in part, on the officials' claims to qualified immunity. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272, 281 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86

---

**6.** While this portion of the affidavit actually stated that no reasonable officer would *not* have taken the action, it is clear from the context of the affidavit that the expert witness was expressing the opinion that "no reasonable and prudent officer ... would have" created the situation.

L.Ed.2d 411 (1985)). It is not a defense to liability; it is an immunity from suit. *Saucier v. Katz,* 121 S.Ct. 2151, 150 L.Ed.2d at 281.

In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523, 534 (1987), Justice Scalia, writing for a majority of the Court, stated:

> The general rule of qualified immunity is intended to provide government officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law. (Citations omitted)

In discussing the reason behind the rule, the Court in *Anderson v. Creighton,* 107 S.Ct. 3034, 97 L.Ed.2d at 529 further stated:

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. (Citation omitted) Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. See, e.g., *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

■ It is important to remember that we are not reviewing this case on its merits with the standards attendant upon such a review and that we are only reviewing the application of immunity upon motions for summary judgment. In cases involving the preliminary review of the use of excessive force, whether qualified immunity is available and whether excessive force actually was used in a particular case are different inquiries. *Saucier v. Katz,* supra. The test for determining the existence of qualified immunity in this context is a two-part test. The first part of the inquiry is "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz,* 121 S.Ct. 2151, 150 L.Ed.2d at 281. In other words, when we consider the summary judgment evidence in the light most favorable to the non-movant, does that evidence show that the conduct complained of violated a constitutional right? If the evidence does not show that a constitutional right has been violated, then the matter is at an end; and qualified immunity protects the official. If the favorable consideration of the evidence reveals that a violation of a constitutional right could be shown, then the next inquiry is whether that right was clearly established at the time. *Saucier v. Katz,* supra.

■ Whether a right has been clearly established involves more than a broad, general proposition. *Saucier v. Katz,* supra. As an example, the court in *Saucier* noted that in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), it was established that the use of force, if excessive under the objective standard of reasonableness, violates the Fourth Amendment. However, when determining immunity, that is not enough. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz,* 121

S.Ct. 2151, 150 L.Ed.2d at 282. We must review the matter within "the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed.2d at 281.

■ As the Court did in *Saucier*, we will assume, without deciding for purposes of this opinion, that a constitutional violation could have occurred under the summary judgment evidence based upon the general prohibition against excessive force. Was that general prohibition the source for clearly established law which the officers violated in this case? "The question is what the officer[s] reasonably understood [their] powers and responsibilities to be, when [they] acted, under clearly established standards." *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed.2d at 285.

■ When considered in the light most favorable to appellee, the summary judgment evidence presented by appellee shows that Deputy Coffey was advancing as opposed to retreating when Mr. Poyner was shot. However, the undisputed evidence establishes that, at the time Mr. Poyner was shot, the officers had just seen him raise his weapon to a firing position. The clearly established standards at the time provided that an officer was justified in using deadly force to protect himself. *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374 (Tex.App.—Dallas 1994, no writ). Because there was no clearly established rule which would prohibit Deputy Coffey and Officer Cozart from using the force which they did, when faced with Mr. Poyner's weapon,

they are entitled to qualified immunity from Section 1983 claims; and the trial court erred when it failed to grant that immunity to them.[7]

■ Claims against Sheriff Bradford and Chief Wheeler basically related to matters connected with hiring, supervising, and training Deputy Coffey and Officer Cozart. Unless those policies and practices were entered into or conducted with conscious disregard or deliberate indifference to the risk that Deputy Coffey or Officer Cozart would commit the particular constitutional violation in question, they are entitled to immunity from suit under Section 1983. *Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626, 641 (1997). Sheriff Bradford and Chief Wheeler both brought forth summary judgment evidence which established their hiring, training, and supervision practices. Viewing the summary judgment evidence in the light most favorable to appellee, no fact issue has been raised by the summary judgment evidence that any of the practices and procedures of which complaint is made were the result of deliberate indifference on the part of either Sheriff Bradford or Chief Wheeler. Sheriff Bradford and Chief Wheeler are entitled to immunity in connection with the Section 1983 claims, and the trial court erred when it failed to grant them that immunity.

### PLEA TO THE JURISDICTION

■ When determining a plea to the jurisdiction, it is now clear that we consid-

---

7. In a post-submission letter brief, appellee urges that the "state created danger" doctrine applies to the facts of this case. The cases which recognize the "state created danger" doctrine are distinguishable in that in those cases the State employees created a situation which increased the danger to the victim from third parties. Here, no third parties were involved. Further, in those cases recog-nizing the doctrine, the victims played no part in the harm that came to them. See, e.g., *McClendon v. City of Columbia*, 258 F.3d 432 (5th Cir.2001); *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir.1995); *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir.1994). The "state created danger" doctrine does not apply in this case.

er not only the plaintiff's pleadings but also the evidence before the trial court. *Texas Department of Criminal Justice v. Miller*, supra; *Bland Independent School District v. Blue*, 34 S.W.3d 547 (Tex.2000). In *Texas Department of Criminal Justice v. Miller*, supra, 51 S.W.3d at 587, 44 Tex. Sup. Ct. J. at 964–65, the court stated: "Under *Jones*, we must examine the plaintiff's pleadings to decide whether sovereign immunity has been waived." (Citing *Texas Department of Transportation v. Jones*, 8 S.W.3d 636, 639 (Tex.1999)). The court also said that it must "decide whether [the plaintiff] has 'affirmatively demonstrate[d] the court's jurisdiction to hear the cause'" and that it will "consider the facts alleged by the plaintiff, and to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." See also *Texas Natural Resource Conservation Commission v. White*, 46 S.W.3d 864, 868 (Tex.2001).

### Sovereign Immunity

 The government, its agencies, and its officials are protected from suit under the doctrine of sovereign immunity. *Federal Sign v. Texas Southern University*, supra. A governmental unit is clothed with sovereign immunity unless that immunity has been waived by the legislature. See *City of San Antonio v. Hernandez*, supra; see also *Harris County v. Dillard*, 883 S.W.2d 166 (Tex.1994). An employee of a governmental unit is also entitled to a claim of sovereign immunity in claims against him in his official capacity. *McCartney v. May*, supra. The doctrine of sovereign immunity implicates jurisdictional considerations. *Vincent v. West Texas State University*, 895 S.W.2d 469 (Tex.App.—Amarillo 1995, no writ).

 The legislature has provided for waiver of sovereign immunity in certain instances set forth in the Texas Tort Claims Act.[8] These instances of waiver are limited and are narrowly defined. *Texas Department of Criminal Justice v. Miller*, supra. It is the prerogative of the legislature to waive or not to waive the protection afforded by sovereign immunity. *Federal Sign v. Texas Southern University*, supra. Those instances in which the legislature has provided for waiver of immunity, as relevant here, are set forth in Section 101.021 of the Texas Tort Claims Act which provides:

A governmental unit in this state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Although immunity might be waived under the provisions of Section 101.021, certain acts are exempted from that waiver of immunity. Those circumstances include instances in which the act complained of is an intentional one. See Section 101.057(2).

 The pleadings and proof did not establish that the death in this case arose

from the operation or use of a motor-driven vehicle or from a condition or use of tangible personal or real property, except for the weapons involved. Even assuming that the pleadings and evidence showed negligence or other wrongful acts, that conduct must involve a condition or use of tangible personal or real property. In *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994), the supreme court stated that Section 101.021 "requires the property's condition or use to cause the injury." The fact that some property is involved is not enough. As the *Miller* court stated: "Using that property must have actually caused the injury." *Texas Department of Criminal Justice v. Miller*, supra, 51 S.W.3d at 588, 44 Tex. Sup. Ct. J. at 965.

In this case, the alleged "use" of property was the headlights on patrol vehicles, emergency overhead lights, and similar uses of the vehicles. However, Mr. Poyner's death did not "arise from" the use of such property but, rather, from the intentional use of the weapons. The use of property must be such that it was the "direct device" causing the death, and there must be a "causal nexus" for liability; this has not been established. *Holder v. Mellon Mortgage Company*, 954 S.W.2d 786 (Tex.App.—Houston [14st Dist.] 1997), *rev'd on other grounds*, 5 S.W.3d 654 (Tex. 1999). Further, it is not enough that the property merely furnish the condition which makes the injury possible. *Union Pump Company v. Allbritton*, 898 S.W.2d 773 (Tex.1995); *City of San Antonio v. Hernandez*, supra. Likewise, failure to train, supervise, perform background checks, and other like claims made by appellee are not such that implicate the use of tangible personal or real property. While those are independent causes of action, under Section 101.021, the requirement that the claim be based upon the condition or the use of tangible personal or real property remains. See *Texas Department of Public Safety v. Petta*, 44 S.W.3d 575 (Tex.2001).

The difficulty in applying the "use" provisions of the Texas Tort Claims Act has been the subject of discussion for many years. We note that the Texas Supreme Court has invited the attention of the legislature to this difficulty on several occasions. See *Texas Department of Criminal Justice v. Miller*, supra, 51 S.W.3d at 588–89, 44 Tex. Sup. Ct. J. 963 at 966, and cases cited therein. The matter of waiver of sovereign immunity is one addressed to the legislature, and any waiver must be "by clear and unambiguous language." *DeWitt v. Harris County*, 904 S.W.2d 650, 652 (Tex.1995). The legislature recently spoke to the issue of clear and unambiguous language when it enacted Act of June 15, 2001, 77th Leg., R.S., ch. 1158, § 8, 2001 Tex. Sess. Law Serv. —— (Vernon) (to be codified at TEX. GOV'T CODE ANN. § 311.034):

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by § 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.

All of the remaining claims except one relate to the handling, mishandling, or ignoring of information, and similar claims. Those types of claims have long been held not to be subject to the waiver provisions of the Texas Tort Claims Act and do not involve the condition or the use or misuse of tangible personal or real property. See *Texas Department of Public Safety v. Pet-*

*ta,* supra; see also *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175 (Tex.1994).

 Those claims pertaining to the use of firearms are the claims which remain for our discussion in connection with sovereign immunity. The pleadings and evidence suggest nothing other than that the officers intended to shoot Mr. Poyner. Merely claiming that an act is negligent does not change its nature. *Medrano v. City of Pearsall,* 989 S.W.2d 141 (Tex. App.—San Antonio 1999, no pet'n). While it provides for waiver of sovereign immunity in certain enumerated circumstances, the Texas Tort Claims Act also provides that the waiver does not apply in certain instances, such as where the injury or death is the result of an intentional tort. See Section 101.057(2). An intentional tort, as opposed to negligence, is one in which the actor has the specific intent to inflict injury. *Reed Tool Company v. Copelin,* 689 S.W.2d 404 (Tex.1985). The pleadings and evidence before the court show that Mr. Poyner's death was due to an intentional act which has been excluded from the waiver provisions of the Texas Tort Claims Act.

Because the pleadings and evidence do not show that sovereign immunity was waived in this case and because the injury and death was caused by an intentional act, the trial court erred when it did not grant the pleas to the jurisdiction. For the same jurisdictional reasons, Sheriff Bradford, Deputy Coffey, Chief Wheeler, and Officer Cozart are also entitled to sovereign immunity in their official capacities.

 For the reasons stated in the above discussion concerning Section 1983 claims against Sheriff Bradford and Chief Wheeler, we determine that the trial court also erred when it denied the pleas to the jurisdiction filed by Eastland County, the City of Gorman, and Dispatch. We note that, while Dispatch has raised immunity issues regarding the state claims and the civil rights claims made under Section 1983, Eastland County and the City of Gorman raised immunity issues only under the state claims. However, Section 1983 immunity is jurisdictional and, therefore, must be addressed and may be raised at any time. See *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### HOLDING IN CAUSE NO.
### 11–00–00184–CV

The judgment of the trial court is affirmed in part and reversed and rendered in part. Insofar as it denied official immunity to Eastland County Deputy Sheriff Clay Coffey and City of Gorman Reserve Officer Gerald Cozart, the summary judgment is affirmed. Insofar as it denied summary judgment as to Eastland County Sheriff Wayne Bradford and City of Gorman Chief of Police Ken Wheeler, the judgment of the trial court is reversed and judgment is rendered granting Sheriff Bradford's and Chief Wheeler's motions for summary judgment. The interlocutory appeal filed by Eastland County Cooperative Dispatch is premature and is dismissed for want of jurisdiction.

### HOLDING IN CAUSE NO.
### 11–00–00284–CV

The judgment of the trial court is reversed, and judgment is rendered dismissing the suit against Eastland County Cooperative Dispatch, Eastland County, and the City of Gorman brought by Elnor Maxine Poyner, Individually and as Independent Executor of the Estate of William Euell Poyner, and as sole heir of William Euell Poyner.