Opinion filed November 2, 2023



In The

# Eleventh Court of Appeals

_____

No. 11-23-00114-CV

_____

**PECAN VALLEY MENTAL HEALTH MENTAL RETARDATION REGION OPERATING AS PECAN VALLEY CENTERS FOR BEHAVIORAL AND DEVELOPMENTAL HEALTHCARE, Appellant**

**V.**

**JANE DOE, Appellee**

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. 23CVDC-00026**

**O P I N I O N**

This is an interlocutory appeal from the trial court's denial of Appellant's plea to the jurisdiction that is based on the defense of governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (West Supp. 2022).

Jane Doe, Appellee, sued Pecan Valley Mental Health Mental Retardation Region operating as Pecan Valley Centers for Behavioral and Developmental Healthcare (the Center), Appellant, and others (who are not parties to this appeal) for negligence and gross negligence, which she alleged resulted in her being sexually assaulted on several occasions by her stepfather, Arran Spoede, while she was a patient at the Center. Doe alleges that Spoede was an employee of the Center when he committed the sexual assaults. The Center answered and filed a plea to the jurisdiction contending that the trial court did not have subject-matter jurisdiction over Doe's claims because (1) the Center is a unit of local government by statute and thus is entitled to immunity from liability and suit under the Texas Tort Claims Act (TTCA) and (2) the TTCA bars her claims as they are alleged in her original petition (the operative pleading). *See* CIV. PRAC. & REM. § 101.001 *et seq*. (West 2019). After a hearing, the trial court denied the Center's plea.

The Center raises a single issue on appeal: whether the trial court erred when it denied the Center's plea to the jurisdiction. Within this issue, the Center advances six arguments as to why it contends that the trial court erred: (1) Doe's operative pleading fails to acknowledge the Center's status as a local governmental unit, much less describe how the Center's immunity is waived under the TTCA; (2) Doe's implicit reliance on Section 101.021(2) of the TTCA does not waive the Center's immunity because Doe's alleged injury was not "caused" by the Center's "use" of tangible personal property, i.e., a cell phone; (3) even if it could be said that Doe's injury was "caused" by Spoede's "use" of a cell phone, the Center, were it a private person, would not be liable to her under Texas law; (4) even if the Center's immunity were otherwise waived by Spoede's "use" of the cell phone and the Center were liable to her if it were a private person, the intentional tort exclusion in Section 101.057(2) of the TTCA prohibits the imposition of liability against the Center for any injuries she sustained that arose from Spoede's sexual and other

misconduct; (5) Section 101.024 of the TTCA prohibits the imposition of punitive damages against a governmental unit; therefore, Doe's gross negligence cause of action fails; and (6) Doe's operative pleading conclusively negates the trial court's subject-matter jurisdiction, and she should not be allowed an opportunity to amend and re-plead because, based on these facts, she cannot allege any viable cause of action against the Center. Because we agree with the Center, we reverse and render.

## I. *Factual and Procedural Background*

The Center acknowledges in its brief that it disputes the underlying facts as alleged in Doe's operative pleading; however, the Center nonetheless assumes Doe's allegations are correct for the purpose of this appeal. In her operative pleading, Doe essentially alleges that: (1) she was a former patient at the Center; (2) while she was a patient there, Spoede was employed as the Center's Information Technology Systems Administrator and he sexually assaulted her on several occasions at the Center's facility in Stephenville; (3) because of his position at the Center, Spoede had unfettered access to information about the Center's patients and he worked in an unsupervised environment; (4) the Center issued "equipment" to Spoede for use in his position at the Center and he used this equipment (primarily a cell phone) to record the sexual assaults that he committed against her; and (5) she was injured as a result of Spoede's misconduct.

Doe filed her original petition on February 9, 2023, and asserted two causes of action against the Center and others: (1) negligence and (2) gross negligence. The Center answered and filed a plea to the jurisdiction on March 20, 2023, contending that the trial court lacked subject-matter jurisdiction over the claims that Doe alleged in her original petition against the Center because governmental immunity protected the Center from liability and suit, and thus barred her claims. The trial court held a hearing on the Center's plea on May 1, 2023, and signed an order denying the plea the same day. This appeal followed.

## II. *Applicable Law and Standards of Review*

### A. *Plea to the Jurisdiction*

Before a court may decide a case, it is essential that the court possess subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A plea to the jurisdiction is a dilatory plea and a proper method by which to challenge a trial court's subject-matter jurisdiction. *Id.* at 554. Whether a trial court has subject-matter jurisdiction over a case is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 317, 226 (Tex. 2004)); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.). Because the Center challenges the denial of its plea, we review the trial court's ruling de novo. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).

The purpose of a plea to the jurisdiction is to defeat a pleaded cause of action without reaching the merits. *Blue*, 34 S.W.3d at 554. A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 226–27. Thus, the plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied).

When the plea only challenges the plaintiff's pleadings, as in the case before us, we must determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear and decide the case; in this regard, the plaintiff bears the burden to allege such facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Tex. Dep't of Crim. Justice v. Rangel*, 595 S.W.3d 198,

4

205 (Tex. 2020); *Miranda*, 133 S.W.3d at 226. Therefore, we must accept as true all factual allegations in the plaintiff's pleadings, construe them liberally in the pleader's favor, and look to the pleader's intent. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337, 342–43 (Tex. App.—Eastland 2018, pet. dism'd). If the allegations create a fact question regarding jurisdiction, a trial court may not grant the plea because the factfinder must resolve the fact issue. *Rangel*, 595 S.W.3d at 205; *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Colorado Indep. Sch. Dist.*, 660 S.W.3d 767, 771 (Tex. App.—Eastland 2023, no pet.). But if the pleader fails to raise a fact question on the jurisdictional issue, the trial court may rule on the plea as a matter of law. *Rangel*, 595 S.W.3d at 205.

B. *Governmental Immunity*

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State, its agencies, and its political subdivisions from lawsuits and liability for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *IT-Davy*, 74 S.W.3d at 853. Governmental immunity is derived from the State's sovereign immunity. Therefore, the State's political subdivisions, which include units of local government, are afforded the same immunity protections as the State. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

In Texas, the TTCA is the only source for common-law recovery against a governmental unit, thus, all tort theories alleged against a governmental unit are assumed to be under and subject to the TTCA. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). The Center is a local governmental community mental health and disabilities facility that operates pursuant to Chapter 534 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY

CODE ANN. § 534.001 *et seq*. (West 2017). Thus, as a governmental unit, and for purposes of our analysis, the Center is subject to the provisions of the TTCA and is afforded the protections, if applicable, of governmental immunity under the TTCA. *See* HEALTH & SAFETY § 534.001(c)(1) (a community center, such as Appellant, is defined as an agency of the state, a governmental unit, *and* a unit of local government by Chapters 101 and 102 of the Texas Civil Practice and Remedies Code); *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 288 (Tex. 2022); *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998).

Governmental immunity embraces two concepts: immunity from suit and immunity from liability. *Reata*, 197 S.W.3d at 374; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity deprives a trial court of subject-matter jurisdiction for actions in which certain governmental units have been sued unless the unit has expressly consented to suit. *Reata*, 197 S.W.3d at 374; *Miranda*, 133 S.W.3d at 224; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). On the other hand, immunity from liability is an affirmative defense, not a matter of subject-matter jurisdiction; however, this immunity must still be waived. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Miranda*, 133 S.W.3d at 224. Because immunity from suit defeats a trial court's subject-matter jurisdiction, it is properly raised in a plea to the jurisdiction. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022); *Miranda*, 133 S.W.3d at 225–26.

In this case, the claims that Doe has asserted against the Center arise under the TTCA. Section 101.021 of the TTCA provides a limited waiver of immunity that allows plaintiffs to bring suits against governmental units in only certain and narrowly defined circumstances: the immunity of a governmental unit will be waived *only* if the complained-of injuries were proximately *caused* by the *negligent* condition or *use* of tangible personal property by the governmental unit and/or its employees. CIV. PRAC. & REM. § 101.021(2); *Tex. Dep't of Crim. Just. v. Miller*,

6

51 S.W.3d 583, 587 (Tex. 2001); *Bossley*, 968 S.W.2d at 341–43; *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 78, 81 (Tex. 1997). The mere nonuse of tangible personal property is not actionable under the TTCA. *Miller*, 51 S.W.3d at 587–89; *Bossley*, 968 S.W.2d at 340–43; *Kassen v. Hatley*, 887 S.W.2d 4, 13–14 (Tex. 1994).

By challenging a governmental unit's assertion of immunity, a plaintiff, such as Doe, may overcome a governmental unit's immunity defense only if the plaintiff demonstrates that the legislature has clearly and unambiguously waived the unit's immunity by statute. *Rattray v. City of Brownsville*, 662 S.W.3d 860, 865 (Tex. 2023); *Dohlen*, 643 S.W.3d at 392 (citing *Tooke*, 197 S.W.3d at 330). Without such a waiver, the trial court lacks subject-matter jurisdiction to proceed, and the claims alleged against the governmental unit are barred. *Rattray*, 662 S.W.3d at 865. Accordingly, the trial court must dismiss the suit if the plaintiff cannot satisfy the burden of affirmatively demonstrating the trial court's jurisdiction to decide and hear the case by showing that the claim falls within a statutory waiver of immunity. *Id.*

In our analysis, we begin with the presumption against a waiver of immunity until the plaintiff establishes otherwise. *Rattray*, 662 S.W.3d at 866. To overcome this presumption, the plaintiff must allege circumstances that fall within a provision of the TTCA that authorizes a waiver of immunity. *Id.* Further, and to avoid dismissal, a plaintiff must also negate the application of the various exceptions and exclusions in the TTCA that function to protect the governmental unit. *Id.* Generally, a plaintiff may discharge this burden by alleging facts that bring a claim "within" the TTCA's waiver of immunity. *Id.* at 867. But being "within" the waiver entails analyzing whether a plaintiff has (1) satisfied the provisions that clearly and affirmatively waive the governmental unit's immunity and (2) negated the exceptions and exclusions in the TTCA that would bar the plaintiff's waiver of immunity assertion. *Id.* Both criteria must be established to defeat the governmental unit's immunity defense. *Id.*

III. *Analysis*

The Center first argues that Doe's operative pleading fails to (1) acknowledge the Center's status as a local governmental unit; (2) reference any section of the TTCA; (3) sufficiently allege facts that bring her claims within the TTCA's waiver of immunity; or (4) explain in any respect how any factual assertion raised by her could be interpreted to constitute a waiver of the Center's immunity.

Section 101.021 of the TTCA (the waiver provision), as relevant here, reads in part: "A governmental unit in the state is liable for . . . personal injury . . . *caused by* a condition or *use of tangible personal . . . property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." CIV. PRAC. & REM. § 101.021(2) (emphasis added). In her operative pleading, Doe refers to a Center-issued cell phone, computer, and other equipment that Doe claims were used by Spoede to record the sexual assaults that he committed against her. The cell phone, computer, and other equipment referenced in Doe's operative pleading clearly constitute tangible personal property. However, to invoke the TTCA's waiver provision and to waive the Center's immunity, Doe must plead sufficient facts that show that her complained-of injuries were *caused* by a negligent *use* of this property. In other words, a causal "nexus" must exist between the complained-of injuries and the *use* of this property. *Bossley*, 968 S.W.2d at 342–43; *LeLeaux v. Hampshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992).

After reviewing Doe's operative pleading, and as discussed below, we conclude that her pleading neither explains nor provides sufficient factual content as to how the Center's immunity under the TTCA has been, or could be, waived.

A. *The "Use" of Tangible Property and Other Negligence Allegations*

To support a waiver of immunity, a negligence cause of action that is asserted against a governmental unit must satisfy the TTCA's "use of tangible property" requirement. In this context, we must interpret the term "use" according to its

ordinary meaning—to put or bring the property into action or service. *Rangel*, 595 S.W.3d at 206. The "use" of tangible personal property, if alleged, requires more than merely stating that government property played a role in causing an alleged injury. Here, Doe must allege sufficient facts to show that the tangible personal property was affirmatively used. In doing so, Doe may not conflate a "failure to use" allegation with the requirement of affirmative use. *Rattray*, 662 S.W.3d at 871. This is so because negligence claims that are asserted against a governmental unit based on either the "nonuse" of tangible property or the governmental unit's "failure to act" are not actionable and do not trigger the TTCA's limited waiver of immunity. *Annab*, 547 S.W.3d at 614; *Miller*, 51 S.W.3d at 588; *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869–70 (Tex. 2001); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Kassen*, 887 S.W.2d at 14. Indeed, failures or non-action by the governmental unit do not equate to "use" or constitute tangible property under the TTCA. *Annab*, 547 S.W.3d at 614; *Tex. Dep't of Crim. Just.-Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 814–15 (Tex. 2012); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580–81 (Tex. 2001).

Doe alleges in her operative pleading that the Center was negligent in, among other ways, (1) training, supervising, monitoring, and/or overseeing Spoede and his use of the equipment that the Center issued to him, (2) implementing, following, and enforcing the Center's policies and procedures with respect to the use of the issued equipment, (3) preventing sexual misconduct at their facility, and (4) hiring and supervising Spoede—by "negligently hiring a sexual predator" and providing him "access to personal information of the Center's patients." These claims—negligent hiring, training, supervision, and policy and procedure implementation—are not actionable under the TTCA because they essentially allege "failures in conduct" and do not directly involve the Center's use of tangible personal property. In this regard, Texas courts have consistently held that:

9

- Allegations of negligent hiring against a governmental unit are not actionable under the TTCA, and the unit's immunity is not waived, because such allegations do not implicate or involve the "use" of tangible personal property. *City of Dayton v. Gates*, 126 S.W.3d 288, 290–91 (Tex. App.—Beaumont 2004, no pet.); *Eastland Cnty. Co-op. Dispatch v. Poynor*, 64 S.W.3d 182, 190–91, 198 (Tex. App.—Eastland 2001, pet. denied); *Davis v. Educ. Serv. Ctr.*, 62 S.W.3d 890, 895–96 (Tex. App.—Texarkana 2001, no pet.); *McCord v. Mem'l Med. Ctr. Hosp.*, 750 S.W.2d 362, 363 (Tex. App.—Corpus Christi–Edinburg 1988, no writ).

- Allegations that a governmental unit (1) failed to furnish proper training or instruction to its employees or (2) negligently trained its employees are not actionable under the TTCA, and the unit's immunity is not waived, because such allegations do not implicate or involve either the "condition" or "use" of tangible personal property; such conduct constitutes only the use of *information* which is not tangible property under the TTCA. *Petta*, 44 S.W.3d at 580–81; *City of Waco v. Williams*, 209 S.W.3d 216, 224–25 (Tex. App.—Waco 2006, pet. denied); *Gates*, 126 S.W.3d at 290–91; *McClain v. Univ. of Tex. Health Center at Tyler*, 119 S.W.3d 4, 10 (Tex. App.—Tyler 2002, pet. denied); *Poynor*, 64 S.W.3d at 190.

- A governmental unit's failure to supervise its employees or the negligent supervision of its employees will not fall within the TTCA's waiver of immunity because these allegations do not involve the "use" of tangible personal property. *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 583 (Tex. 2005); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543–44 (Tex. 2003); *Lopez v. McMillion*, 113 S.W.3d 447, 452 (Tex. App.—San Antonio 2003, no pet.); *Poynor*, 64 S.W.3d at 190–91, 198; *Gainesville Mem'l Hosp. v. Tomlinson*, 48 S.W.3d 511, 514 (Tex. App.—Fort Worth 2001, pet. denied); *Brown v. Montgomery Cnty. Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex. App.—Beaumont 1995, no writ); *Harris v. Galveston Cnty.*, 799 S.W.2d 766, 767–68 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *McCord*, 750 S.W.2d at 363.

- The negligent implementation of a policy is not itself actionable under the TTCA and does not establish a waiver of immunity. The waiver of immunity

must be demonstrated under some other provision of the TTCA before such a claim may be asserted. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 533 (Tex. 2022). That is, the negligent implementation of a policy does not establish a waiver of the governmental unit's immunity if the complained-of injury does not arise from the "use" or "condition" of tangible personal property. *Williams*, 209 S.W.3d at 224–25; *Dimas v. Tex. State Univ. Sys.*, 201 S.W.3d 260, 267–68 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *City of San Antonio v. Parra*, 185 S.W.3d 61, 64 (Tex. App.—San Antonio 2005, no pet.); *see Nueces Cnty. v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.).

Moreover, Doe's negligence claims enumerated above cannot stand because these acts of negligence as alleged against the Center only involve the misuse or nonuse of *information*. Under the TTCA, any personal property that is involved in or connected with the complained-of conduct must be tangible. *Information*, in whatever form, is intangible—it lacks a corporeal, physical, or palpable quality— and it cannot form the basis for the waiver of a governmental unit's immunity under the TTCA. *Petta*, 44 S.W.3d at 580–81; *Kassen*, 887 S.W.2d at 14; *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178–79 (Tex. 1994).

The Center argues that the case before us is similar to the circumstances that were alleged in *Campos*. We agree. In *Campos*, government officers used laundry carts to block and seal a door, thereby obstructing the only entrance and confining the plaintiffs to the area where they were sexually assaulted by the officers. 384 S.W.3d at 814. The plaintiffs alleged that because tangible property (the laundry carts) was furnished to the officers by the governmental unit and because this property was directly involved in the officer's commission of the sexual assaults, the governmental unit was negligent and therefore liable to them because it made the laundry carts available to the officers. *Id.* However, the supreme court, in rejecting this argument, stated:

11

[Simply] providing someone with property that is not inherently unsafe is not a "use" [of property] under the TTCA. The Plaintiffs do not claim that the property [the officers] used was inherently unsafe, so TDCJ's immunity is not waived for making the property available to them.

*Campos*, 384 S.W.3d at 815; *see also San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 245–46 (Tex. 2004).

Conversely, Doe argues that the holding in *Russell v. City of Houston*, 808 F.Supp.2d 969 (S.D. Tex. 2011) is dispositive. In *Russell*, a police officer used a department issued handgun, handcuffs, and a vehicle during the commission of a sexual assault. *Russell*, 808 F.Supp.2d at 975. In committing the sexual assault, the officer used the handgun to threaten the plaintiff with deadly force, used the handcuffs to pull the plaintiff out of the vehicle and physically restrain her, and used the vehicle to transport the plaintiff to a secluded location to avoid being discovered as he sexually assaulted her. *Id.* The district court found that each article of tangible property was used by the officer to enhance the officer's control over the plaintiff and that this was more than a "mere involvement" of property that the city had issued to him. *Id.* at 974–75. Rather, the city's alleged negligent issuance of property was to an officer who had previously been the subject of a sexual misconduct complaint and the issued property was the very kind of tangible property that could be used to commit a sexual assault. *Id.* at 975.

In reliance of *Russell*, which we note is neither controlling nor persuasive, Doe argues that the Center was negligent in providing a cell phone to Spoede because the Center *knew or should have known* that doing so created an opportunity, a means, and the ability for Spoede to secure private locations at the Center for him to generate video and audio recordings, photographs, and/or other images of Doe as he sexually assaulted her. Doe further alleges that there were "red flags," of which the Center was either aware, or should have been aware, regarding Spoede—CPS investigations involving Spoede and multiple occasions by which Doe "believes"

that Spoede deactivated the motion sensors at the Center's facility when he was there after hours so that he could sexually assault her without being discovered. However, and despite Doe's assumptions and beliefs, a governmental unit's failure to take affirmative action based on *information* that may concern its employee of which it either *knew or should have known* is not tantamount to the "use" of tangible personal property under the TTCA and will not suffice to invoke Section 101.021(2)'s waiver of immunity. *Annab*, 547 S.W.3d at 614.

Here, Doe makes no allegation that the cell phone itself was used by Spoede to sexually assault her or that any cell phone recording of Spoede's sexual assaults was used by him as a threat to maintain her silence. Rather, the allegations raised by Doe in her operative pleading are more akin to the "mere involvement" of the cell phone because she only alleges that Spoede *used* the cell phone issued to him by the Center to record the sexual assaults that he committed against her. To waive the Center's immunity, Doe's allegations in her operative pleading must go beyond the bare assertion that the Center made the cell phone available to Spoede because merely providing the cell phone to Spoede, without more, is not enough to waive the Center's immunity. This she failed to do.

Further, liability may only attach under the TTCA for "some condition" of tangible personal property. Thus, for immunity to be waived under this portion of the "tangible personal property" prong, it must be alleged that the tangible property (i.e., the cell phone) that was provided and used was somehow defective or inadequate. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385–86 (Tex. 2016); *Tex. Dep't of Trans. v. Garza*, 70 S.W.3d 802, 805–07 (Tex. 2002). In other words, the furnished tangible property must be in a defective or inadequate condition when it is provided by the governmental unit, and it must actually cause the complained-of injury. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019). In this case, Doe failed to plead or allege that the cell

13

phone that was provided to and used by Spoede was either defective, inadequate, or inherently unsafe. Even if she had, the Center's provision of nondefective tangible property to Spoede for use during his employment with the Center does not constitute a "use" of tangible property under the TTCA. *Hardin Cnty. Sheriff's Dept. v. Smith*, 290 S.W.3d 550, 553 (Tex. App.—Beaumont 2009, no pet.).

B. *Causal Link*

As we have said, Section 101.021 waives a governmental unit's immunity only if the negligent use of tangible property *causes* the plaintiff's injuries. CIV. PRAC. & REM. § 101.021(2); *Rattray*, 662 S.W.3d at 874. "Causation" requires more than mere involvement of the property. *Bossley*, 968 S.W.2d at 343. Thus, causation is not established simply because some tangible property is involved. *Id.* For the complained-of injuries to fall within the TTCA's waiver, the "government's use of the property 'must have actually *caused* the injury.'" *Rangel*, 595 S.W.3d at 206 (quoting *Sampson*, 500 S.W.3d at 388–89) (emphasis added). In addressing causation, the use of tangible property does not cause injury to the plaintiff if it does no more than furnish the condition that made the complained-of injury possible. *Bossley*, 968 S.W.2d at 343. In this regard, the tangible property must do more than play "a role" in causing the injury. *Rattray*, 662 S.W.3d at 871. Therefore, to prevail, the plaintiff must show that the negligent *use of the property* in question actually *caused* the complained-of injuries—there must be a causal nexus between the negligent use of the tangible property and the complained-of injury. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 725–26 (Tex. 2016); *Miller*, 51 S.W.3d at 588.

As the Center correctly points out, Doe's complained-of injuries arose from and were actually *caused* by the sexual assaults that Spoede committed against her, not from his use of the cell phone in recording the sexual assaults. This distinction is significant because it highlights Doe's inability to establish the necessary causal nexus. *See, e.g., Doe v. City of Fort Worth*, 646 S.W.3d 889, 901–04 (Tex. App.—

14

Fort Worth 2022, no pet.) (the plaintiff was sexually assaulted by a city employee on city premises and she alleged that the city's provision of a key card to the employee and key card access system waived the city's immunity; the court held that the city's immunity was not waived because the items only facilitated the assault, but did not cause it); *Bonham v. Tex. Dep't of Crim. Just.*, 101 S.W.3d 153, 158–59 (Tex. App.—Austin 2003, no pet.) (a prison layout and lack of monitoring equipment did not cause a female prisoner's injury when she was sexually assaulted by a prison guard); *Tarrant Cnty. Hosp. Dist. v. Henry*, 52 S.W.3d 434, 440–42 (Tex. App.—Fort Worth 2001, no pet.) (holding that disabling an alarm system and locking doors to the area where the sexual assault occurred facilitated the sexual assault of a hospital employee by a coworker but did not cause the sexual assault); *Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 720–21 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (a college dormitory where a sexual assault occurred did nothing more than furnish the condition and provide the context for the assault but did not cause it); *Wimberley v. Sloan*, 963 S.W.2d 556, 558–59 (Tex. App.—Eastland 1998, no pet.) (the chair where the plaintiff sat when she was assaulted did not directly cause the plaintiff's injuries).

In this instance, apart from the sexual assaults that Spoede committed against Doe, it cannot be refuted that the *cell phone* that Spoede used to record the sexual assaults did not *cause* the sexual assaults or the injuries of which Doe complains. Rather, the cell phone was the means that Spoede utilized to collect and preserve the memories of his egregious conduct. Further, the cell phone itself was not inherently unsafe. Simply because the cell phone was involved, albeit at Spoede's sole direction, in recording the sexual assaults that he allegedly committed against Doe, such involvement "[did] no more than furnish the condition that [made Doe's] injury possible." *Campos*, 384 S.W.3d at 815; *Bossley*, 968 S.W.2d at 343.

Here, Doe has not pleaded sufficient facts to establish, and she cannot do so based on the circumstances presented, the required causal link between her complained-of injuries and the Center's alleged negligent conduct. Therefore, because Doe has not, and cannot, overcome the presumption of immunity, and because there is an absence of the necessary causal nexus, we conclude that the Center's immunity is not waived. *Rattray*, 662 S.W.3d at 866–67.

C. *The Intentional Tort Exclusion*

Even if we assume that Doe could establish a waiver of the Center's immunity under the TTCA, which we have concluded that she has not and cannot do, the Act's intentional tort exclusion bars the claims that she has alleged against the Center.

To defeat the Center's plea to the jurisdiction, Doe was required to negate any provision in the TTCA that creates an exception to, and thus withdraw, the waiver of immunity in Section 101.021. *Rattray*, 662 S.W.3d at 867. To determine whether a plaintiff has alleged a valid claim under the TTCA, we must look to the gravamen of the plaintiff's complaint and the true nature of the dispute—in this regard, a plaintiff may not expand the TTCA's limited waiver of immunity through artful pleading. *McKenzie*, 578 S.W.3d at 513. In this case, the actual nature of the claims that Doe has asserted—although she refrained from alleging that her claims and injuries arose from an *intentional act*, as it should be alleged—is that she was injured as a result of the intentional, sexual assaults that Spoede committed against her, not by any negligent failure, inaction, or affirmative action taken by the Center (namely, by issuing a cell phone to Spoede).

If a plaintiff pleads facts which can only amount to a claim for an intentional tort, irrespective of whether the claim is framed as negligence, the claim as alleged is based on an intentional tort and will be barred under Section 101.057(2). *See* Civ. Prac. & Rem. § 101.057(2). A plaintiff cannot circumvent the TTCA's intentional tort exception by couching her claims in terms of negligence. *Harris*

*Cnty., TX v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *City of Laredo v. Nuno*, 94 S.W.3d 786, 789 (Tex. App.—San Antonio 2002, no pet.). As such, and irrespective of her efforts, Doe cannot recast her claims in the form of negligence allegations in order to avoid the conclusion that her injuries were caused by and arose from Spoede's intentional conduct. Thus, to the extent that Doe seeks to bring an intentional tort claim against the Center that is disguised as a negligence claim, Section 101.057(2) prohibits her from doing so.

The TTCA waives immunity for certain negligent conduct, not for claims that arise from an intentional tort, such as assault. *See* CIV. PRAC. & REM. § 101.057(2) ("This chapter does not apply to a claim . . . arising out of *assault*, . . . or any other intentional tort."); *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014); *Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d 374, 382 (Tex. App.—Eastland 2006, no pet.). Thus, claims that arise from intentional torts, such as assault, are clearly excluded from the TTCA's waiver of immunity and are not actionable. Here, the underlying claim that Doe has alleged against the Center is clearly based on and arises out of an intentional tort—the sexual assaults that Spoede committed against her. Consequently, where the gravamen of the plaintiff's claim is based on intentionally assaultive conduct or some other intentional tort that is committed by a government employee, such as Spoede's conduct, the governmental unit's immunity is not waived under the TTCA. *Petta*, 44 S.W.3d at 580–82 (the intentional tort exception barred the plaintiff's claim because the claim was based on the same conduct as the plaintiff's assault); *Tex. Tech Univ. Health Sci. Ctr.-El Paso v. Bustillos*, 556 S.W.3d 394, 403–04 (Tex. App.—El Paso 2018, no pet.); *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 630–31 (Tex. App.—Tyler 2001, no pet.) (a patient in a hospital was sexually assaulted by a hospital employee; the court held that even though the patient's complaint was couched in terms of

negligence, her injury arose from an intentional tort and therefore fell within the intentional tort exclusion in Section 101.057(2)). Such is the case here.

Two Texas Supreme Court decisions are instructive and illustrate why the claims that Doe has alleged against the Center—which arise from an intentional tort—are improperly masked as negligence claims.

In *Petta*, the supreme court addressed the assertion of negligence claims against a governmental entity where the actual, underlying conduct was intentional in nature. Melinda Petta sued the Texas Department of Public Safety after a trooper allegedly assaulted her. 44 S.W.3d at 576. The court held that the Department's immunity was not waived for claims that were based on or arose from the trooper's conduct—he struck Petta's car window and shot at her tires—because the trooper's actions were intentional in nature and fell within the TTCA's exclusion for claims arising out of intentional conduct. *Id.* at 580.

The supreme court in *Campos* later addressed and reconciled a similar circumstance that involved an underlying intentional tort—sexual assault—with a negligence claim that was alleged against a governmental unit. *See Campos*, 384 S.W.3d 814–15. However, unlike in *Petta*, tangible property—laundry carts—was used. The plaintiffs contended that the officers (government employees) used laundry carts to block and secure the doorway of the room where the officers sexually assaulted them. In rejecting the plaintiffs' waiver of immunity argument, the court held that the property—the laundry carts—was only used by the officers with the intention to commit the sexual assaults of which the plaintiffs complained. *Id.* at 814. The plaintiffs' only allegations regarding this property were that it was used by the officers in the course of them gaining "exclusive, private, unmonitored, and unfettered access to the Plaintiffs, to thwart escape from the assaults, and to wrongfully confine Plaintiffs during the assaults." *Id.*

In *Campos*, the court held that the intentional tort exclusion applied because, although the property (the laundry carts) was used by the officers during their commission of the sexual assaults, the property's use was intertwined and encompassed within the exclusion of claims that arise from the commission of intentional torts; therefore, the plaintiffs' claims were barred under Section 101.057(2). *Id.*; *Lee v. Gaines Cnty. Sheriff's Off.*, No. 11-18-00173-CV, 2020 WL 4379157, at *4 (Tex. App.—Eastland July 31, 2020, no pet.) (mem. op.) (holding that when the property is used to facilitate an intentional tort, its "use" falls within the intentional tort exclusion); *Hendrix v. Bexar Cnty. Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App.—San Antonio 2000, pet. denied) (the hospital's decision to issue equipment to an employee and the employee's use of an examination room on the hospital's premises during his assault of a patient did not remove the claim from the intentional tort exclusion). In other words, a "use" of tangible property does not occur, and the application of the intentional tort exclusion cannot be avoided, simply because tangible property is made available to a government employee who later uses it to commit an intentional tort. The same reasoning applies here.

We conclude that the claims that Doe has alleged against the Center are indistinguishable from the claims that the court rejected in *Campos*. To survive dismissal, Doe's operative pleading was required to show that the claims she advances are based on and arise from the negligent use of tangible property, rather than for an intentional tort that is masked as a negligence claim. It does not. Doe's operative pleading only alleges that Spoede used the Center-issued cell phone and other electronics during his commission of the sexual assaults to record them and that the cell phone's use was part of his ongoing assaultive conduct. However, Spoede's act of using the cell phone to record the sexual assaults necessarily arose from and is inextricably intertwined with his intentional conduct. Because Spoede's conduct, as alleged, that caused Doe's injuries was intentional in nature and because

19

her complained-of injuries arise solely from Spoede's intentional acts, we conclude that the intentional tort exclusion in Section 101.057(2) bars Doe's claims. Doe has not, and cannot, negate the application of this exclusion. *See Rattray*, 662 S.W.3d at 866 (the failure to negate the applicability of the TTCA's exclusions will not waive a governmental unit's immunity). Therefore, the Center's immunity is not waived.

D. *Gross Negligence and Exemplary Damages*

Doe has also asserted a claim for gross negligence, and she sought to recover exemplary damages. Even if Doe could assert a viable claim for negligence against the Center, which she cannot, the trial court could not exercise subject-matter jurisdiction over her claim for exemplary damages.

In her operative pleading, Doe alleges claims for "gross negligence" and "exemplary damages." Gross negligence is not an independent cause of action; rather, ordinary negligence and gross negligence are "inextricably intertwined"— gross negligence is contingent upon an affirmative finding of ordinary negligence. *Douglas v. Hardy*, 600 S.W.3d 358, 372 (Tex. App.—Tyler 2019, no pet.); *Nowzaradan v. Ryans*, 347 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126–27 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721 (Tex. App.—San Antonio 1994, writ denied). Thus, in the absence of negligence, there can be no gross negligence to support an award of exemplary damages. *Douglas*, 600 S.W.3d at 372.

However, exemplary damages are not recoverable under the TTCA. *See* CIV. PRAC. & REM. § 101.024 ("This chapter does not authorize exemplary damages."); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 299 (Tex. 1995); *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 325 (Tex. App.—Texarkana 2004, pet. denied). Therefore, Section 101.024 bars this claim.

20

E. *Doe's Opportunity to Amend*

Doe maintains that in the event we conclude, as we have, that her operative pleading is deficient, she should be granted the opportunity (1) to amend her pleading to cure the deficiencies and allege facts that would invoke the trial court's subject-matter jurisdiction over this case and (2) to pursue the necessary discovery to obtain information that would support such an amendment.

Generally, if a plaintiff does not allege sufficient facts to affirmatively establish a trial court's subject-matter jurisdiction and if any such pleading defects may be cured by a pleading amendment, then a plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. However, if a plaintiff's pleading affirmatively negates the existence of the trial court's subject-matter jurisdiction, it is appropriate to deny a plaintiff the opportunity to amend. *Id.*; *Lee*, 2020 WL 4379157, at *5.

Here, Doe's operative pleading demonstrates that (1) the Center is immune from liability and suit and (2) even if the Center's immunity is waived, the claims that Doe has or could assert against the Center arise from Spoede's intentional conduct and are thus barred under Section 101.057(2). Doe has failed to plead, and cannot plead, any facts that would show a waiver of the Center's immunity, the negation of the Section 101.057(2) intentional tort exclusion, or her entitlement to pursue a cognizable claim against the Center. As such, and in light of Spoede's intentional conduct, we can conceive of no pleading amendment that Doe could present or any discoverable information that she might obtain if this case continued that would cure her inability to establish the trial court's subject-matter jurisdiction over this case. Therefore, and based on the circumstances before us, Doe's pleading deficiencies cannot be cured and providing her the opportunity to re-plead is not justified.

21

## IV. *This Court's Ruling*

It was Doe's burden to plead sufficient facts to affirmatively show that the trial court has subject-matter jurisdiction to hear and decide this case. When we apply the applicable standard of review to Doe's operative pleading, as we must, we conclude that Doe failed to satisfy her burden. Even if we construe Doe's operative pleading most liberally, she did not, and cannot, affirmatively show that the trial court possesses, or could possess, subject-matter jurisdiction over this case. Because no waiver of immunity exists or can be pleaded by Doe, the Center is entitled to rely on its defense of governmental immunity.

Although we do not condone Spoede's egregious conduct as alleged, we are nonetheless bound to follow and apply the well-settled and established principles that control and dictate the disposition that we express today. Because we conclude that the trial court lacks subject-matter jurisdiction to hear and decide this case, the trial court erred when it denied the Center's plea to the jurisdiction. Accordingly, we sustain the Center's sole issue on appeal.

We reverse the order of the trial court, and we render judgment dismissing Doe's suit against the Center for lack of subject-matter jurisdiction.


W. STACY TROTTER
JUSTICE


November 2, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

22